**PILOTS RIGHTS ASSOCIATION, INC., Plaintiff,**

v.

**FEDERAL AVIATION ADMINISTRATION et al., Defendants.**

Civ. A. No. 79–3384.

United States District Court, District of Columbia.

March 21, 1980.

---

Michael H. Bader, Washington, D. C., Raymond C. Fay, Alan M. Serwer, Chicago, Ill., John M. Pekley, Washington, D. C., for plaintiff.

Bette Uhrmacher, Asst. U. S. Atty., Washington, D. C., for federal defendants.

Nathaniel H. Goodrich, Washington, D. C., for defendant Goddard.

### MEMORANDUM AND ORDER

GESELL, District Judge.

Plaintiff, an association of current and former commercial airline pilots and flight engineers, urges this Court to enjoin the publication of a study which has not yet been completed. The study is being conducted pursuant to a contract awarded by defendant Federal Aviation Administration ("FAA"). Its purpose is to re-examine the continued medical and scientific rationality of the "Age 60 Rule,"[1] which prohibits per-

---

1. The rule, issued in 1959 (24 Fed.Reg. 9767) and now codified at 14 C.F.R. § 121.383(c), limits carriers' use of services as follows:

No certificate holder may use the services of any person as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday. No person

sons over sixty years of age from serving as pilots for certificated air carriers. The case is before this Court on defendants' motion to dismiss, which has been fully briefed by the parties. The Court concludes that plaintiff lacks standing to challenge the awarding of the contract and that no issues presented in the pleadings are ripe for judicial determination. Because neither a concrete controversy nor a judicially cognizable injury is presented, the case must be dismissed on these two independently sufficient grounds.

For purposes of the motion, the facts are taken as alleged in plaintiff's papers. The Age 60 Rule was initially promulgated pursuant to rulemaking requirements of the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* (1976), and has been sustained by the courts under applicable standards of agency review. *See Air Line Pilots Assn., Intl. v. Quesada,* 276 F.2d 892 (2d Cir. 1960), *cert. denied,* 366 U.S. 962, 81 S.Ct. 1923, 6 L.Ed.2d 1254 (1961); *O'Donnell v. Shaffer,* 491 F.2d 59 (D.C.Cir.1974). In response to congressional interest and for other reasons, the agency has continued to examine the effects of aging on the pilot population. Its announced long-term goal is to substitute individual assessments of pilot capabilities for the current uniformly applied prohibition on continued employment. Passage of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34 (1976), has resulted in more searching judicial scrutiny of age-based restrictions on employment to ensure that such restrictions are imposed only when reasonably necessary for safe and efficient job performance. *See, e. g., Houghton v. McDonnell Douglas Corp.,* 553 F.2d 561 (8th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1977); *Aaron v. Davis,* 414 F.Supp. 453 (E.D.Ark.1976). Recently, Congress has further focused its attention on

the Age 60 Rule, and ordered that a study be conducted by the National Institutes of Health ("NIH") to determine whether the rule is medically warranted. Pub.L.No.96–171, 93 Stat. 1285 (Dec. 29, 1979). This statutory mandate may represent only a temporary accommodation, as there is considerable support in Congress to modify the existing rule. *See* H.R.Rep.No.474, 96th Cong., 1st Sess. (1979), reported in U.S. Code Cong. & Admin.Code 1979, pamph. 11, p. 4817; 125 Cong.Rec. H11537–65 (daily ed., Dec. 5, 1979).

While congressional hearings on the Age 60 Rule were in progress, the FAA negotiated a contract for the study at issue here. On or about July 16, 1979, the agency awarded the contract to defendant Goddard, who is a former FAA Federal Air Surgeon and a strong supporter of the rule. The FAA acted by direct negotiation rather than advertising for competitive bids, pursuant to 41 U.S.C. § 252(c)(10) (1976).[2] Plaintiff expressed no interest in competing for this contract, nor is there any evidence that it expected or aspired to play a tangible role in the conduct of the study. Goddard and a committee of scientific and medical personnel appointed by him have held two meetings since the contract was awarded. The committee members have not been assigned specific writing or research responsibilities, and they have yet to see the draft report which Goddard announced he would prepare for their review.[3]

Plaintiff apparently advances a bifurcated theory for this action. On the one hand, it is asserted that the awarding of the contract without advertising was improper because it was not impracticable to secure competition for the services to be performed. This sole source negotiated award also is alleged to be part of a larger conspiracy to deprive plaintiff and its members of their rights under ADEA and the United

---

may serve as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday.

2. The statutory provision conditions negotiated contracts as follows:

All purchases and contracts for property and services shall be made by advertising . . . except that such purchases and contracts

may be negotiated by the agency head without advertising if . . .

. . . . .

for property or services for which it is impracticable to secure competition.

3. *See* deposition of Dr. Robert Bruce, committee member, taken Feb. 20, 1980, at 53, 56.

States Constitution, by rigging contract performance so as to predetermine the outcome of a study in favor of retaining the rule. Behind both arguments is plaintiff's contention that its members will be irreparably harmed should the Goddard contract study be permitted to issue as a putatively impartial reassessment of the Age 60 Rule. The nature of this alleged injury is presumably that the Goddard report will pervasively influence the NIH study ordered by Congress and will taint further FAA rulemaking efforts in this area if and when a new rulemaking proceeding is initiated.

■ Plaintiff asserts it has standing to challenge a clear violation of duty by agency procurement officials. This generalized concern to vindicate the public's interest in proper administration of procurement procedures clearly does not constitute the specific injury in fact contemplated under Article III of the Constitution. *See Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). *See also Perkins v. Lukens Steel Co.*, 310 U.S. 113, 132, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). Plaintiff is not a disappointed bidder, and has suffered no competitive or other direct economic injury as a result of the Goddard award. Reliance on *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (D.C.Cir. 1970), and its progeny is inapposite in this regard. Courts must exercise special care when considering emergency challenges to a procurement determination, in deference to traditional notions of agency discretion and the complex, technical aspects of procurement decisions made by government officials. *See M. Steinthal & Co. v. Seamans*, 147 U.S.App.D.C. 221, 232–33, 455 F.2d 1289, 1300–01 (D.C.Cir.1971). Judicial forbearance is particularly advisable where, as here, the moving party lacks a demonstrable injury.

The alleged harm to plaintiff's members is, at most, that the current Age 60 Rule will remain unchanged. Plaintiff suffers no injury it would not experience in the absence of the study, unless it is the reinforcement of a prevailing rationale. Even this "injury" is premature and speculative. Too many intervening factors are unknown and uncontrollable. The study itself has

not been released. Its findings and recommendations are uncertain. Moreover, there is no indication that the relief sought is in any way likely to cure the harm alleged. Assuming *arguendo* that the study is scrapped, neither the necessity of conducting a subsequent FAA study nor its particular results can be assured. Finally, the agency's future use of its own study results is not now reviewable in this Court. That the current Age 60 Rule has been found valid is not disputed. Any effort to modify the rule or propose a new regulation on the subject is within the agency's sound discretion. It has not made such a proposal. It may well choose not to do so. Plaintiff suffers no cognizable injury from such potential or prospective decisions.

■ Lack of standing would be sufficient to merit dismissal of this action. Even if plaintiff's standing difficulties are overlooked, the Court must still find that the claims raised present a case or controversy ripe for judicial review. An assessment of ripeness requires the Court to ask whether the issues presented are fit for judicial resolution, and whether the parties will suffer a direct and immediate hardship from delay. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Assn., Inc. v. Gardner*, 387 U.S. 158, 162, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967).

Plaintiff argues that the contract data will be used to deprive its members of certain statutory and constitutional rights. The study itself is without legal effect. It is subject to agency review, and to discretionary incorporation or rejection, wholly or in part, through subsequent agency initiatives. If relied on in new rulemaking efforts, plaintiff will have ample opportunity to question its methods and findings during the notice-and-comment process. If credited or adopted by the NIH, plaintiff can make any opposing views known directly to Congress, which commissioned the NIH inquiry. At present, no evidence exists that either of these situations will develop. Mere disclosure of the results of the study does not give rise to a justiciable controversy. There simply is no final agency action before the Court.

Because the alleged controversy is premature and purely conjectural, it also is apparent that plaintiff faces no immediate or direct hardship. The present rule remains in operation. The request for an injunction, in effect aimed at forestalling possible adverse publicity related to the Goddard findings, is a purely political matter with which this Court has no concern.

For all of the above-mentioned reasons, defendants' motion is granted and the case is dismissed in its entirety.[4]

SO ORDERED.

---

4. Plaintiff's lack of standing and the absence of a ripe controversy also require that the case be dismissed as to defendant Goddard and those current FAA officials sued in their individual as well as official capacities. In light of this dispositive ruling, all pending discovery motions are dismissed as moot.