**AMERICAN MOTORCYCLE ASSOCIA-TION d/b/a American Motorcyclist Association, Plaintiff,**

v.

**COUNCIL ON ENVIRONMENTAL QUALITY, et al., Defendants.**

**Civ. A. No. 80–3243.**

United States District Court, District of Columbia.

May 21, 1981.

F. Eugene Wirwahn, Cook, Purcell, Hanse & Henderson, Washington, D. C., for plaintiff.

Sandra M. Schraibman, and Theodore M. Grossman, Dept. of Justice, Civil Division, Washington, D. C., for defendants.

MEMORANDUM OPINION

FLANNERY, District Judge.

I. *Background*

This case involves the alleged failure of the defendants, Council on Environmental Quality (CEQ), Office of Environmental Quality, and various officials of those agencies, to follow certain regulations in procuring a report entitled "Off Road Vehicles on Public Lands".

Plaintiff American Motorcycle Association is an association of more than 120,000 motorcycle enthusiasts which regularly represents members' interests before Congress, the Executive branch, and the courts. It alleges that it has standing to challenge the procurement of the report on two grounds: its members are potential bidders for CEQ contracts and its members' interest in public lands is threatened because CEQ advocates increased regulations on the use of off road vehicles on public lands.

Defendant CEQ was created and its powers were defined by the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, and the Environmental Quality Improvement Act, 42 U.S.C. § 4371–74. The CEQ has no power under any statute to implement any policy or administer any programs. Its chief function is to study environmental issues and make recommendations to the President on environmental matters. However, plaintiff has not alleged that CEQ has made any recommendations regarding off road vehicle use. Section 4372(e), 42 U.S.C., authorizes the Chairman of the CEQ, in his capacity as director of the Office on Environmental Quality, "to contract with public or private agencies, institutions, and organizations and with individuals without regard to section 529 of Title 31 and section 5 of Title 41 in carrying out his functions." Thus the plaintiff admits that CEQ can negotiate contracts without regard to the requirements of formal advertising and the prohibition against advances of public monies.

In September 1977 CEQ selected David Sheridan to be the author of the report on a non-competitive sole-source basis and contracted with him to develop and write the report for $10,000.00. CEQ did not notify the plaintiff or the public of the availability of this contract. In 1978 CEQ again contracted with Sheridan to prepare a revised version of the report reflecting comments received on the original report. In 1980 the General Accounting Office reviewed the procurement of the report in response to a request by Senator Jesse Helms. It concluded that CEQ should have procured the report through competitive negotiations but specifically declined to take any remedial action with respect to the contracts.

Plaintiff filed this suit on December 19, 1980 alleging that defendants violated federal procurement law and that they acted arbitrarily, capriciously, and in abuse of their discretion in their choice of the contractor, supervision of the project, adoption of the results, and circulation of the study to the public and private sectors. Based on these allegations, plaintiff seeks an order declaring the procurement of the report to be unlawful, enjoining defendants from awarding contracts on a non-competitive basis without adequate justification, enjoining defendants from further distributing the report, and repudiating and recalling the report.

II. *Discussion*

 The concept of standing is part of the constitutional limitation of federal court jurisdiction to actual cases or controversies. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37, 96 S.Ct. 1917, 1923, 48 L.Ed.2d 450 (1975). Article III requisites for standing include "not only a 'distinct and palpable injury' . . . but also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct." *Duke Power Co. v. Caro-*

lina Envt'l Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978) (cites omitted). See also Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 260–61, 97 S.Ct. 555, 560–61, 50 L.Ed.2d 450 (1977). In order to satisfy the second element of this standing test, the plaintiff must show that his injuries would be redressed by the relief he seeks. Duke Power, supra, 438 U.S. at 74, 98 S.Ct. at 2631.

The Supreme Court has also set forth standing requirements which rest on prudential, rather than constitutional considerations. For example, the Court has refused to exercise jurisdiction where the plaintiff asserts a generalized grievance held in common by all or at least a large group of citizens. See, e.g., Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216–17, 94 S.Ct. 2925, 2929–30, 41 L.Ed.2d 706 (1974); United States v. Richardson, 418 U.S. 166, 173–74, 94 S.Ct. 2940, 2944–45, 41 L.Ed.2d 678 (1974). As the Court has explained

> Without such limitations—closely related to Art. III concerns but essentially matters of judicial self-governance—the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.

Warth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975).

■ Plaintiff here alleges it has been injured in two ways. First, the plaintiff and its members have been deprived of an opportunity to bid on CEQ contracts by CEQ's failure to notify the public of the opportunity to bid. Second, plaintiff alleges injury in fact in that its members' interest in off road vehicle use on public lands is threatened by the improper affixation of CEQ's imprimatur on the report and the distribution of the report through official channels.

Plaintiff's first alleged injury is insufficient to establish standing. Plaintiff does not allege that it has suffered direct economic injury or competitive injury or even that any of its members are in the business of preparing reports similar to the one at issue. Instead, it alleges that its members are disappointed potential bidders. As Judge Gesell of this court held in Pilots Rights Ass'n. v. Federal Aviation Administration, 86 F.R.D. 174, 177 (D.D.C. 1980), "The generalized concern to vindicate the public's interest in proper procurement procedures clearly does not constitute the specific injury in fact contemplated under Article III of the Constitution." [1]

Moreover, even if the injury plaintiff has alleged were sufficient, there is no showing that plaintiff's injuries would be redressed by the relief it seeks. Plaintiff seeks an order requiring CEQ to repudiate and recall the report and prohibiting it from awarding contracts on a sole-source non-competitive basis without adequate justification. Were the court to grant this relief, there is no assurance that it would be necessary for CEQ to conduct a further study, that CEQ would not be able to justify a sole source procurement, or that plaintiff or one of its members would be invited to negotiate with CEQ.[2]

■ Plaintiff also alleges injury to its members' interest in the use of public lands. It relies heavily on United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), where the Court held that plaintiffs had standing because they alleged their enjoyment of the environment

---

1. Prudential concerns also militate against standing in this case because plaintiff asserts a generalized grievance held in common by its 120,000 members as well as by a large group of other people, for example, people who use off road vehicles on public lands but do not belong to plaintiff association and all other potential bidders on the contract.

2. The July 30, 1980 GAO report on this matter did not conclude that CEQ should have allowed public bidding on the contract in question or should have formally advertised for bids. On the contrary, the GAO merely stated that the information before it did not provide an adequate sole-source justification and the CEQ should have negotiated with a greater number of bidders.

would be diminished by the adverse environmental impact caused by decreased use of recyclable goods brought about by a rate increase on those commodities. Plaintiff's reliance on *SCRAP* is misplaced. There the Supreme Court specifically required that

> A plaintiff must allege that he has been or will in fact be harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action.

*United States v. SCRAP, supra,* 412 U.S. at 688–89, 93 S.Ct. at 2416. Plaintiff's argument succeeds only if the court assumes that public lands will be closed to off road vehicles as a direct result of the CEQ report. However, the report has no legal effect and the CEQ has taken no action on it. The nexus between the contents of the report and the closing of public lands to motorcycles is simply too speculative to confer standing upon plaintiff to challenge the procurement of the report. In other words, plaintiff has not satisfied the requirement that there be a " 'fairly traceable' causal connection between the claimed injury and the challenged conduct." *Duke Power, supra,* 438 U.S. at 72, 98 S.Ct. at 2630.

■ Even if plaintiff had standing to pursue this case, it presents a nonjusticiable political question insofar as plaintiff seeks to prevent CEQ from advocating a political position. As the court stated in *Pilots Rights, supra,*

> the request for an injunction, in effect aimed at forestalling adverse publicity related to the [report's] findings, is a purely political matter with which this court has no concern.

86 F.R.D. at 178.