Mary STONE, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA, et al., Defendants.

Civ. A. No. 82–1761.

United States District Court, District of Columbia.

Aug. 15, 1983.

Lynn E. Cunningham, Neighborhood Legal Service, Joel Polin, Washington, D.C., for plaintiffs.

George O. Ackerman, Asst. Corp. Counsel, Washington, D.C., for D.C. defendants.

Nathan Dodell, Asst. U.S. Atty., Civ. Div., Washington, D.C., for Federal defendants.

## MEMORANDUM

FLANNERY, District Judge.

This matter is before the court on the motion of defendants Pierce and Chisholm for judgment on the pleadings, the motion of defendant District of Columbia to dismiss, and on plaintiffs' second motion for a preliminary injunction. For the reasons set forth below, defendants' motions are granted, plaintiffs' motion is denied, and this case is dismissed.

*Background*

The United States Housing Act of 1937, as amended, 42 U.S.C. § 1437a *et seq.,* provides in part that tenants of public housing projects assisted under the Act shall pay as

rent no more than 30 percent of the family's monthly adjusted income, or 10 percent of the family's monthly income, or that portion of the family's welfare assistance (if it is receiving any) designated for housing. 42 U.S.C. § 1437a.[1] By regulation the United States Department of Housing and Urban Development has provided that "rent" as limited by the statute shall include utility charges. For those public housing tenants who pay their utility charges directly to utility companies, the local housing authority calculates utility allowances, an estimate of actual utility charges, which is applied as a credit to reduce rent payments to the authorities so that the total of payments to the authority and to the utility company does not exceed the statutory ceiling on "rent".

In 1980 HUD promulgated an interim rule, codified at 24 C.F.R. § 865.470 *et seq.*, establishing uniform standards for calculating utility allowances. The rule requires local housing authorities to monitor utility rates and, in the event of a cumulative increase in those rates of 10 percent or more, to revise utility allowances accordingly. The rule required the local authorities to implement revised utility allowances, calculated as explained in the rule, no later than February 1, 1981, or such later date as HUD might allow.

From 1977 through September 30, 1982 the District of Columbia accorded public housing tenants utility allowances based on 1977 consumption data. The District concedes that in the period from 1977 through the date HUD promulgated its interim rule, utility rates for both gas and electricity increased 10 percent or more. The District did increase the allowances twice, once for gas effective April 1, 1979, and once for electricity effective October 1, 1982. In neither instance did the District submit the allowances to HUD for review or approval.

HUD claims that it consistently reminded the District of Columbia, beginning in 1980, of the District's obligation under the interim rule to revise its utility allowances to reflect increased utility costs, but plaintiffs dispute whether HUD in fact adequately discharged the duty plaintiffs claim HUD had to enforce the regulation. In any event, in the fall of 1982 HUD notified the District that it must develop a new schedule of utility allowances by April 30, 1983 and implement it by May 31, 1983. In January, 1983 the District submitted its new schedule to HUD and, after some modification following HUD comments, implemented the schedule as of April 1, 1983 pursuant to a stipulation reached with plaintiffs by which plaintiffs agreed to drop their first motion for a preliminary injunction in exchange for implementation of the new schedule.

Meanwhile, on February 15, 1983 defendants Pierce and Chisholm of HUD filed a motion for judgment on the pleadings or, in the alternative, for summary judgment. Because of the negotiations among the parties which resulted in the stipulation just mentioned, and several intervening discovery disputes, plaintiffs' opposition to HUD's motion was not filed until June 7, 1983. Due to a court order deferring consideration of HUD's alternative motion for summary judgment, plaintiff's opposition addressed only the legal arguments raised in HUD's motion for judgment on the pleadings. Meanwhile, on May 13, 1983 plaintiffs filed a second motion for a preliminary injunction seeking a prohibition of the eviction by the District of any members of the plaintiff class until final resolution of this case. On June 9, 1983 the District of Columbia opposed the motion for a preliminary injunction by filing a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. Finally, on June 23, 1983 plaintiffs filed a motion for partial summary judgment against all defendants, which the court deferred consideration of until resolution of

1. Until October 1, 1981 Section 1437a provided that rents were to be fixed by the housing authority and approved by the Secretary, but that rent was not to exceed one-fourth of family income as defined by the Secretary. In any event, rent was not to exceed 5 percent of gross family income or, if the family were receiving welfare assistance, that portion of their assistance designated for housing.

the pending dispositive motions. The three motions now before the court—HUD's motion for judgment on the pleadings, the District's motion to dismiss, and plaintiff's motion for a preliminary injunction—are discussed below.

*Discussion*

*HUD's motion for judgment on the pleadings*

In their complaint plaintiffs seek only prospective relief against HUD, asking for a declaratory judgment that HUD has failed to discharge its duty to enforce the utility allowance regulation and an injunction ordering HUD to force compliance with the regulation by the District.

When HUD filed its motion for judgment on the pleadings, the parties had not yet entered into the stipulation providing for implementation of the revised utility allowances on April 1, 1983. In its reply, HUD argues that because plaintiffs have obtained the prospective relief sought against HUD, their complaint as to HUD has become moot. The court agrees.

▮▮▮ Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies. The controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). Plaintiffs have obtained from the District of Columbia housing authority a utility allowance revised in accordance with HUD regulations. Plaintiffs therefore no longer have any legal interest adverse to HUD. Plaintiffs deny this case is moot and insist that this court find that HUD violated a statutory duty to enforce the utility allowance regulations and to order HUD to obey that duty in the future. But the court's jurisdiction is predicated on the existence of "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 241, 57 S.Ct. at 464. To accept plaintiffs' invitation would be to issue an advisory opinion, based on the state of facts no longer in existence, of precisely the type forbidden by the mootness doctrine and the case or controversy requirement. Accordingly, plaintiffs' claims against HUD shall be dismissed for lack of jurisdiction.[2]

*District of Columbia motion to dismiss*

1. *42 U.S.C. § 1437a*

In its motion to dismiss the District of Columbia argues, first, that plaintiffs' claims based on alleged violations of the statutory ceiling on rents must be dismissed because no private right of action may be asserted under the statute. Plaintiffs counter that because the statutory language is mandatory—public housing tenants "shall pay as rent" no more than a certain amount—Congress intended to confer rights in tenants to challenge statutory violations.

Prior to 1975 the Supreme Court applied a relatively simple test to determine whether it ought to imply a private right of action under a statute, reasoning that "[i]f a statute was enacted for the benefit of a special class, the judiciary normally recognized a remedy for members of that class." *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), citing *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). Under the *Rigsby* approach, the federal courts "regarded the denial of a remedy as the exception rather

---

**2.** In their motion for partial summary judgment, plaintiffs attempt to assert claims for money damages against HUD, asking that HUD be ordered to increase its annual contributions for operating costs to the District of Columbia housing authority to cover the amounts by which plaintiffs have been overcharged. That demand, however, is beyond the scope of the relief sought in the complaint and is therefore not properly before the court. Even if it were, though, plaintiffs' claim would fail. As explained at pp. 978–980, *infra,* in the discussion of the motion to dismiss of the District of Columbia, plaintiffs have no private right of action to bring this suit.

than the rule." *Merrill Lynch, supra,* 456 U.S. at 375, 102 S.Ct. at 1837.

In 1975, however, the Supreme Court decided to modify its approach to the question whether a statute includes a private right of action. In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court listed four factors courts ought to consider in deciding the question: first, is the plaintiff one of a class for whose special benefit the statute was enacted; second, is there any indication of legislative intent to create or deny such a remedy; third, is the remedy consistent with the statute's underlying purpose; fourth, is the cause of action one traditionally relegated to state law. *Id.* at 78, 95 S.Ct. at 2088. In delineating those factors the court indicated its understanding that the "increased complexity of federal litigation and the increased volume of federal litigation strongly supported the desirability of a more careful scrutiny of legislative intent than *Rigsby* had required." *Merrill Lynch, supra,* 456 U.S. at 377, 102 S.Ct. at 1839.

Moreover, cases after *Cort v. Ash* made clear that the court would focus carefully on "the intent of Congress". *Id.* As the court noted in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979):

> It is true that in *Cort v. Ash,* the Court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.

In narrowing its focus in those subsequent cases the court has demonstrated a strong reluctance to imply private rights of action. For example, in *Universities Research Ass'n. v. Coutu,* 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981), the court held that no private right of action for back wages existed under the Davis-Bacon Act requiring the presence of stipulations in federal construction contracts setting mini-

mum wages for certain workers. The Act required that every federal construction contract in excess of a specified amount "shall contain" the minimum wage provisions. The court recognized the provision as designed to benefit construction workers, but noted that "the fact that an enactment is designed to benefit a particular class does not end the inquiry; instead, it must also be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation." *Id.* at 771, 101 S.Ct. at 1462. Finding that Congress had not drafted the legislation with "an unmistakable focus on the benefitted class", *id.* at 772, 101 S.Ct. at 1462, the court declined to imply a private right of action. *See also Texas Industries, Inc. v. Radcliff Materials,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (no implied right to contribution under the antitrust laws); *Northwest Airlines v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (no implied right of action for contribution under the Equal Pay Act or Title VII); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (no private right of action for damages under the Investment Advisors Act of 1940); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (no private right of action under § 17(a) of the Securities and Exchange Act of 1934).

Furthermore, in those few recent cases in which the court has implied a private right of action, it has based its decision on strong evidence of Congressional intent from the legislative history or the circumstances surrounding the statute's enactment. For example, in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the court found that a private right of action existed under Title IX of the Education Amendments of 1972, but only because those amendments had been modeled after Title VI of the Civil Rights Act of 1964, which the Title IX drafters knew had already been interpreted to include a private right of action. In *Merrill Lynch, Pierce, Fenner & Smith v. Curran, supra,*

456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182, the Court implied a private right of action under the Commodities Exchange Act. As in *Cannon,* the Court noted that lower courts had already found such an implied right at the time Congress amended the Act heavily in 1974, and the Congress in 1974 was aware of that right, but did not seek to curb it.

In the case at bar, analysis must begin with the language of the statute itself. Plaintiffs argue that the provision of Section 1437a that public housing tenants "shall pay as rent" no more than the statutory limit is a command which vests benefits in them and that a private right of action should be implied to allow them to defend those benefits. But the statute in *Coutu* provided only that federal construction contracts "shall contain" certain minimum wage provisions, and that language did not support the implication of a private right of action. To be sure, plaintiffs are among the intended beneficiaries of Section 1437a, but as the court wrote in *Coutu,* "the fact that an enactment is designed to benefit a particular class does not end the inquiry; instead, it must also be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation." 450 U.S. at 771, 101 S.Ct. at 1462.

As noted above, the language of Section 1437a does not evince any Congressional intent to create a private right of action. And, as is often the case when the statute itself is silent, the legislative history nowhere speaks of private enforcement. Finally, there is nothing in the circumstances surrounding the enactment of Section 1437a or its subsequent amendment to indicate, as in *Cannon* or *Merrill Lynch,* that Congress intended to create a private right of action. The legislative history does not indicate that Congress was aware, as in *Merrill Lynch,* of any court having interpreted the Act as creating a private right of action. Indeed, numerous courts have found to the contrary. In *McGhee v. Housing Authority of Lanett,* 543 F.Supp. 607 (M.D.Ala.1982), the court faced squarely the issue whether a private right of action existed under Section 1437a. The court engaged in a careful analysis of the statutory language, the silence of the legislative history, the structure of the statute, and the circumstances surrounding its enactment, concluding that Congress did not intend to create any private enforcement rights. *Id.* at 607–09. *See also Perry v. Housing Authority of City of Charleston,* 664 F.2d 1210 (4th Cir.1981) (no private right of action under § 1437 of the Act); *Thompson v. Binghamton Housing Authority,* 546 F.Supp. 1158 (N.D.N.Y.1982) (no private right of action under § 1437d(c) of the Act); *cf. Perez v. United States,* 594 F.2d 280 (1st Cir.1979) (declaration of policy in § 1437 to remedy unsafe, unsanitary dwellings imposes no duty on HUD to guarantee that all federally-financed housing will be safe); *Boston Public Housing Tenants Council, Inc. v. Lynn,* 388 F.Supp. 493 (D.Mass.1974) (HUD has no judicially enforceable duty to insure that all federally funded low-income housing is maintained in a decent, safe and sanitary condition); *but see Owens v. Housing Authority of City of Stamford,* 394 F.Supp. 1267 (D.Conn.1975) (complaint alleging violations of Brooke Amendment rent ceiling of 25 percent states a claim upon which relief may be granted, despite absence of definition of "rent" in statute). In these circumstances, this court holds that no private right of action exists under 42 U.S.C. § 1437a to enforce the utility allowance regulations at 24 C.F.R. § 865.470 *et seq.* and plaintiffs claims thereunder shall be dismissed.[3]

---

**3.** Plaintiffs' argument that they enjoy a private right to enforce compliance with the utility allowance regulations is all the more tenuous because it is not based directly on the statute. Indeed, the utility allowance regulations at 24 C.F.R. § 865.470 *et seq.* do not even implement the statute directly but instead follow from the regulation interpreting the word "rent" to include utility charges. Plaintiffs' argument is based, then, on regulations implementing other regulations which interpret the statute. And plaintiffs conceded at oral argument that it would be within the power of the Secretary to rescind all of the regulations in question. Such is hardly a sound foundation on which to base

### 2. Equal protection and due process

In addition to statutory violations, plaintiffs claim that they have been injured by the District of Columbia's violations of their constitutional rights to equal protection and due process.

 Plaintiffs first argue that they are denied equal protection of the laws because the District's alleged miscalculation of their utility allowances has resulted in their paying higher "rent" than other residents of public housing. This unequal treatment, plaintiffs claim, is invidious discrimination. But plaintiffs do not claim that the District's action is based on any suspect classification, nor do they allege that any fundamental rights have been infringed. Consequently, the District need show only that the separation of public housing tenants into two classes—those in individually metered units who pay utility charges directly to the utility and those in master metered units paying through the authority—bears a rational relation to a legitimate government purpose. The individual metering of public housing units is required by HUD regulations "to the extent feasible." 24 C.F.R. § 865.401. Only a portion of the District's public housing is individually metered because the District has found it most "feasible", most cost-effective, to install individual meters in connection with either new construction or large-scale renovation. And tenants are assigned to those individually metered apartments on a random basis. The District's policy with respect to individual metering and assignment to those apartments is reasonable and bears no hint of invidious discrimination in violation of the equal protection clause.

Second, plaintiffs assert that the District's alleged miscalculation of their utility charges deprived them of property—by overcharging their rent—without due process of law. As the District points out, plaintiffs enjoy no constitutional right to housing. *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). *A fortiori* plaintiffs enjoy no right to a particular utility allowance—a point plaintiffs apparently conceded at oral argument when they admitted it would be within the power of the Secretary to rescind the utility allowance regulations altogether. Nor may plaintiffs complain of any denial of procedural due process because two avenues of redress are open to them. The grievance procedures applied by the housing authority afford tenants the right to a hearing for a number of complaints, including alleged miscalculation of rent, which, in effect, is plaintiffs' complaint here. In addition, no tenant may be evicted for nonpayment of rent without an eviction order from the local court. Before that court any member of the plaintiff class could raise the same arguments made here as to the alleged miscalculation of the utility allowance. Accordingly, plaintiffs' constitutional claims are without merit, and plaintiffs' action shall be dismissed for failure to state a claim upon which relief may be granted.[4]

An appropriate Order accompanies this Memorandum.

---

a finding that Congress intended to create a private right of action.

4. In view of the court's dismissal of plaintiffs' federal claims, the court declines to exercise pendent jurisdiction over plaintiffs' state law claims of breach of contract and negligence. Although there may be circumstances in which it would be appropriate for a federal court to retain jurisdiction over state law claims even after dismissal of all federal claims, the general rule remains that "if the federal claims are dismissed before trial … the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). This rule is of particular force where there is no barrier, procedural or otherwise, to plaintiffs' pursuit of their local law claims before the local court.

Finally, because the court has decided defendants' dispositive motions in their favor, plaintiffs' motion for a preliminary injunction must, of course, be denied.