**Brenda EDWARDS, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 85–0479.**

United States District Court, District of Columbia.

Oct. 31, 1985.

Richard Gladstein, Lynn E. Cunningham, Neighborhood Legal Services Program, Washington, D.C., for plaintiffs.

Robert J. Harlan, Jr., M.E. Holleran Rivera, Brian Dunn, Office of Corp. Counsel, D.C., for District of Columbia.

John Polk, Nathan Dodell, Asst. U.S. Attys. U.S. Atty.'s Office, Washington, D.C., Peter M. Campanella, Ann E. Harrison, Paul A. Feiner, HUD, Anthony J. Ciccone, Jr., HUD Office of Litigation, D.C., of counsel, for HUD.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Plaintiffs, residents and former residents of the Fort Dupont Housing Project (Fort Dupont) located in Southeast Washington, D.C., bring this action seeking declaratory and injunctive relief, as well as a retroactive and prospective award of damages from defendants, District of Columbia and Department of Housing and Urban Development (HUD), alleging that defendants have failed to operate Fort Dupont consistent with their duties under the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437 *et seq.*, the Housing Act of 1949, as amended, 42 U.S.C. § 1441 *et seq.*, the Annual Contributions Contracts between HUD and the District of Columbia, and the lease agreements executed by plaintiffs and the District of Columbia. Plaintiffs' primary contentions are that District defendants have effectively demolished Fort Dupont by failing to maintain Fort Dupont in a "decent, safe, and sanitary condition" and have failed in their duties to ensure that plaintiffs are not relocated to substandard housing.

Presently before the Court are the motions of defendants to dismiss this action on the grounds that subject matter jurisdiction is lacking and that plaintiffs have failed to state a claim upon which relief may be granted. After consideration of the motions, the supporting and opposing

memoranda, the argument of counsel, and the entire record herein, the Court is convinced that this action should be dismissed.

The United States Housing Act of 1937 (USHA), as amended, 42 U.S.C. § 1437 *et seq.*, governs the lower income housing program. The general policy of the USHA is set forth in section 1437 which states in pertinent part:

It is the policy of the United States to promote the general welfare of the Nation by employing its funds and credit ... to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income and ... to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs.

42 U.S.C. § 1437. To effectuate this policy, the Department of Housing and Urban Development (HUD) provides financial assistance to local public housing agencies (PHAs) through federal funding contracts (Annual Contributions Contracts) executed between HUD and local PHAs. Two types of funding programs are raised in plaintiffs' complaint: 42 U.S.C. §§ 1437*l* and 1437p. Section 1437*l* of the USHA establishes a comprehensive improvement assistance program which provides federal funding for the renovation of the physical condition of existing public housing and the upgrading of the management and operations of the projects, 42 U.S.C. § 1437*l* (a)(1) and (2). Section 1437p authorizes the Secretary of HUD (the Secretary) to make financial assistance available for demolition of any portion of a housing project, 42 U.S.C. § 1437p.

The legislative history of the USHA and the Housing Act reflects that their primary objective is to promote the general welfare by giving financial assistance to state and local entities attempting to improve housing. The actual development, maintenance, and management of public housing, however, resides with the local authorities. One court, examining the legislative histo-

ry of the Housing Act, cited strong language from Congressional reports which supports the notion that local control was expected:

[A]lthough the housing problem is obviously national in scope, it is fundamentally a local problem, and that the first responsibility for its solution therefore rests with the local community ... Federal assistance for the clearance of slums and blighted areas shall be available only for projects where there has been a local determination ... that the project is needed and where the plans for such project are locally made and locally approved ... and where such projects are *locally initiated, locally developed, and locally managed.* (footnote omitted).

*Perry v. Housing Authority of the City of Charleston,* 664 F.2d 1210, 1213–14 (4th Cir.1981), citing 1949 U.S.Code Cong.Ser. 1550, 1551 (emphasis added). As evidenced by this passage and throughout the legislative history of the USHA and the Housing Act, the scheme designed by Congress contemplates that the local authorities retain primary control over public housing in their respective jurisdictions.

The District of Columbia, through its housing agency, the National Capital Housing Authority (NCHA), the predecessor agency to the Department of Housing and Community Development's Property Management Administration (DHCD/PMA), owns and operates low income housing projects pursuant to D.C. Code § 5–101 *et seq.* (1981). Fort Dupont exists by virtue of this authority. The District of Columbia public housing program is funded in part by HUD, pursuant to funding programs authorized by the USHA, and various instruments executed by HUD and the District, including Annual Contributions Contracts (ACCs).

In their complaint, plaintiffs maintain that the District defendants have failed in their duty to maintain Fort Dupont in a "decent, safe, and sanitary condition" as some of the living conditions pose hazards to their life, health, and safety. The alleged hazards relate to such things as dam-

age to the structure of the buildings, defective plumbing, inadequate heating, and the lack of barricades on vacant dwellings to protect against the threat of vandalism, fires, or squatters. Plaintiffs argue that the deterioration of Fort Dupont constitutes constructive demolition. Plaintiffs are also opposed to plans to relocate them from Fort Dupont to locations which they allege are substandard. Finally, plaintiffs maintain that the District defendants have submitted inadequate applications for funds to upgrade units at Fort Dupont and have, to the detriment of plaintiffs' interests, attempted to secure HUD's approval of an application to demolish several buildings at the project.

Before examining the merits of the complaint, the Court must determine, as a threshold matter, whether it has proper jurisdiction over the subject matter of plaintiffs' claims. *See, West Chicago. v. United States Nuclear Regulatory Commission*, 701 F.2d 632 (7th Cir.1983); *Reynolds v. Sheet Metal Workers, Local 102*, 702 F.2d 221, 226 (D.C.Cir.1981); *Tuck v. Pan American Health Organization*, 668 F.2d 547 (D.C.Cir.1981). Although plaintiffs may have cognizable claims for relief, the preliminary question is whether they may sue in federal court. Absent a showing that proper jurisdiction lies in the federal court, the court must dismiss the action for want of jurisdiction.

Plaintiffs offer several arguments in support of the position that their rights should be vindicated in federal court. As an initial basis for this court's jurisdiction, plaintiffs maintain that as third party beneficiaries of the ACC between the District and HUD, they have a private right of action against HUD on breach of contract grounds. Their ability to sue HUD, plaintiffs argue, stems from the obligation the ACC imposes on HUD to monitor and enforce the District's performance of its obligations to ensure that plaintiffs reside in decent, safe, and sanitary housing.

Next, plaintiffs maintain that they have stated two valid claims for relief under 42 U.S.C. § 1983. The first claim is based on the District's alleged failure to submit an acceptable application for modernization funds to renovate Fort Dupont pursuant to 42 U.S.C. § 1437*l* (a).[1] The second claim concerns the alleged failure of HUD to disapprove pending applications submitted by the District to demolish units at Fort Dupont. Plaintiffs contend that the applications fail to satisfy the prerequisites of 42 U.S.C. § 1437p and applicable HUD regulations, 24 C.F.R. § 970 *et seq.*, which require tenant consultation prior to approval of any demolition application. Plaintiffs maintain that these two statutory provisions of the USHA subject the District of Columbia defendants to certain mandatory federal obligations. As an alternative to their section 1983 claims, plaintiffs argue that they have an implied right of action to enforce these provisions of the USHA against all defendants.

As additional basis for this court's jurisdiction, plaintiffs assert that HUD's failure to deny the demolition applications submitted by the District constitutes arbitrary and capricious action in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706. Plaintiffs further submit that the failure of the District to provide tenants with the opportunity to contest proposed relocations prior to assignment to another unit violates the due process clause of the Fifth Amendment to the Constitution. Finally, plaintiffs request the court to exercise pendent jurisdiction over their local law claims against the District for alleged breach of the lease agreements executed between plaintiffs and the District which establish certain habitability requirements.

After a careful examination of each of plaintiffs' arguments supporting federal court jurisdiction, the Court is convinced that no federal issues exist, and, therefore jurisdiction over plaintiffs claims is lacking.

---

1. Plaintiffs have informed the Court that they have withdrawn their claims against HUD concerning HUD's alleged mishandling of the District of Columbia's application for modernization funds. The Court, therefore, will dismiss plaintiffs' second cause of action.

The Court now turns to an analysis of each asserted basis for jurisdiction.

### A. Demolition Application Requirements and the Administrative Procedure Act

The record reflects that PMA submitted applications to the area HUD office for approval to demolish certain units at Fort Dupont.[2] Plaintiffs contend, in Count IV of the complaint, that the demolition applications, as submitted, fail to satisfy the statutory and regulatory prerequisites for demolition. See 42 U.S.C. § 1437p(b).[3] Although HUD has neither approved nor disapproved the proposed demolition applications, plaintiffs speculate, without any supporting evidence, that the applications will be approved. In other words, plaintiffs maintain that HUD's failure to disapprove the allegedly inadequate applications constitutes arbitrary and capricious agency action as defined by section 706 of the Administrative Procedure Act (APA). 5 U.S.C. § 706.

In opposition, the federal defendants maintain that because the demolition applications are still pending, plaintiffs' claims are not ripe for adjudication. Defendants acknowledge that HUD may not approve a demolition application unless certain prerequisites are satisfied. They contend, however, that the statute merely sets forth the prerequisites to approval rather than prerequisites to submission. As there is nothing in the statute that can be read to prohibit HUD from holding an application

in its files, they contend that plaintiffs' claims are premature.

■■■ The Court agrees with defendants that plaintiffs' fourth claim for relief is not ripe for adjudication. Toilet Goods v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). Plaintiffs appear to ignore the principle enunciated in Article III of the Constitution that the authority of the court extends only to actual cases or controversies. The ripeness doctrine in the administrative review context is designed to prevent premature judicial intervention in uncompleted agency proceedings. See Friedman Bros. Inv. Co. v. Lewis, 676 F.2d 1317, 1318 (9th Cir.1982); Pilots Rights Ass'n v. Federal Aviation Administration, 86 F.R.D. 174 (D.D.C.1980). Accordingly, section 704 of the APA provides that unless final agency action has been taken a district court lacks authority to review plaintiffs' claim, 5 U.S.C. § 704.

■■■ The federal defendants have not contested the position of plaintiffs that the application as submitted fail to comply with the statutory and regulatory prerequisites. In fact, they admitted at oral argument that part of the reason why HUD has not taken action on the demolition applications is because the District has not submitted an acceptable one-to-one relocation plan as required by 42 U.S.C. § 1437p(b)(2). It appears then that there is no agency action for the court to review. The Court has no reason to believe that HUD will not comply with all prerequisites prior to taking any final action on the pending applications.[4]

---

2. By letters dated November 23, 1981, and February 3, 1983, PMA requested approval to demolish a total of 112 units at Fort Dupont.

3. The Secretary may not approve an application or furnish assistance under this chapter unless—
 (1) the application from the public housing agency has been developed in consultation with tenants ... who will be affected by the demolition ... and contains a certification by appropriate local government officials that the proposed activity is consistent with the applicable housing assistance plan; and
 (2) all tenants displaced as a result of the demolition ... will be given assistance by the public housing agency and are relocated to

other decent, safe, sanitary, and affordable housing ...

4. Plaintiffs also argue that the District's submission of inadequate demolition applications gives rise to section 1983 claims against the District, 42 U.S.C. § 1983. Plaintiffs further maintain that as intended beneficiaries of section 1437p of the USHA, they have an implied right of action to force the District to comply with the demolition application requirements set forth in section 1437p and accompanying HUD regulations. As it has been determined that the demolition application issue is not ripe for adjudication, the Court does not reach whether plaintiffs have a viable section 1983 or private right of

This being so, plaintiffs' fourth claim for relief is simply not maintainable at this juncture, and, therefore, will be dismissed.[5]

### B. *Private Cause of Action Under the USHA or 42 U.S.C. § 1983*

▇ Plaintiffs maintain that this court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1337 which provides in pertinent part:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce ...

In *Perry v. Housing Authority*, 486 F.Supp. 498, 501, (D.S.C.1980), *aff'd* 664 F.2d 1210 (4th Cir.1981), the court held that the structure and legislative history of the USHA demonstrate that the Commerce Clause was a substantial basis for the USHA.[6] Section 1337, however, does not have its own jurisdiction conferring provision. *IIT v. Vencap, Ltd.*, 519 F.2d 1001 (2d Cir.1975). For federal jurisdiction to exist pursuant to this section, some federal right, be it constitutional, statutory, or federal common law, must be present. *Perry*, 486 F.Supp. at 501. Here, plaintiffs maintain that the existence of a private right of action under 42 U.S.C. § 1437 and an express cause of action under 42 U.S.C. § 1983 support section 1337 jurisdiction.

▇ The Court first considers plaintiffs' contention that they have a private right of action against all defendants on the grounds that Fort Dupont is not in a decent, safe, and sanitary condition contrary to the policy stated in 42 U.S.C. § 1437. To demonstrate a private right of action under a federal statute against any party, public or private, a plaintiff bears a heavy burden of showing that Congress "affirmatively or specifically contemplated private enforcement when it passed the relevant statute." *Samuels v. District of Columbia*, 770 F.2d 184, 194 (D.C.Cir.1985). Simply stated, whether a statute creates a private cause of action depends upon a determination of the intent of Congress. *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). To guide courts in determining whether a private remedy is implicit in a particular statute, the Supreme Court has established four factors to consider:

First, is the plaintiff "one of the class for which whose *especial* benefit the statute was enacted" ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? (citations omitted).

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975). The two first factors have been deemed to be the

---

action claim against the defendants to enforce section 1437p.

**5.** Plaintiffs alternatively assert that this court has authority to review this claim as the failure of HUD to act on the application for over two years constitutes unlawfully withheld or unreasonably delayed agency action pursuant to 5 U.S.C. § 706(1)(A). The Court finds plaintiffs' position puzzling. If the applications are incomplete as plaintiffs allege, then HUD is precluded from taking any action on them. It appears that plaintiffs want the Court to direct HUD to disapprove the applications simply because they are incomplete. The Court, however, finds no basis for the proposition that these applications cannot remain in HUD files, as

pending, until they are complete. Moreover, HUD is doing exactly what plaintiffs request: not taking any actions on the applications until the statutory prerequisites are satisfied.

**6.** Plaintiffs merely cite section 1337 as a basis for jurisdiction and make no argument as to why the USHA falls within the purview of the Commerce Clause. The District defendants request in a brief footnote that the Court find that the USHA was enacted pursuant to the spending power, United States Constitution, art. 1, § 8, cl. 1, not the Commerce Clause. They do not offer any argument for this position. Absent any evidence of a contrary holding, the Court finds no reason to reject the Court's interpretation in *Perry*.

most important to this inquiry. *See Perry v. Housing Authority,* 486 F.Supp. at 502.

■ As to the first criterion, plaintiffs in the instant case merely state that as the intended beneficiaries of the USHA, they have standing to bring this action. As to the other criteria, plaintiffs state in a conclusory fashion that their claims are "firmly grounded in implied rights of action for the tenants to enforce the USHA." They make no reference to any statutory language, case authority, or even allude to any material that would evidence intent on the part of Congress to grant them any private right of action to enforce the language of section 1437 contemplating that the condition of public housing be decent, safe, and sanitary.

It is not disputed that plaintiffs do indeed benefit from the USHA funding programs. That they benefit, however, is not sufficient to create enforceable federal substantive rights in their favor. *See Thompson v. Binghamton Housing Authority,* 546 F.Supp. 1158, 1182 (N.D.N.Y.1982). Without any evidence of intent on the part of Congress, as required by the second *Cort* criteria, plaintiffs have no standing to bring a private right of action to enforce the particular statutory provision. *See Perry v. Housing Authority,* 664 F.2d 1210, 1213 (4th Cir.1981). Plaintiffs simply have not demonstrated any Congressional intent to create enforceable rights in their favor.

It is important to note that courts examining the legislative history and statutory language of the USHA have recently held that no private right of action in favor of tenants to enforce section 1437 was intended by Congress. *See Thompson v. Binghamton,* 546 F.2d at 1182; *Perry v. Housing Authority,* 664 F.2d at 1216–17; *Perez v. United States,* 594 F.2d 280, 287 (1st Cir.1979); *Boston Public Housing Tenants Council, Inc. v. Lynn,* 388 F.Supp. 493 (D.Mass.1974). The courts have concluded that section 1437 represents a general statement of policy, "too amorphous to create a cause of action." *Perry v. Housing Authority,* 486 F.Supp. 498, 502 (D.S.C.

1980). The Court, having been presented with no compelling reason why it should depart from the precedent construing the legislative history and statutory language of the USHA, finds that plaintiffs do not have a private right of action to enforce the policy statement set forth in section 1437.

■ The Court now turns to plaintiffs' contention that they have a statutory cause of action under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or ... the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. While the statute does not create substantive rights, it provides an express cause of action to redress a deprivation by state officials of rights secured by federal law. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Since a plaintiff is not required to show congressional intent to preserve section 1983 remedies, the burden of demonstrating an actionable section 1983 violation is less stringent than that required in the private right of action context. *See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 21, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981). "Instead, Congress is, in effect, presumed to legislate against the background of section 1983 and thus to contemplate private enforcement of the relevant statute against state and municipal actors absent fairly discernible congressional intent to the contrary." *Samuels v. District of Columbia,* at 194.

■ Determining whether a violation of a particular federal statute gives rise to section 1983 liability involves two initial inquiries: first, whether Congress intended to preclude section 1983 enforcement by

implicitly or explicitly foreclosing a private enforcement in the statutory scheme itself; second, whether Congress failed to establish enforceable rights in the relevant statutory provision. *See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. at 28, 101 S.Ct. at 2630. "If the answer to either inquiry is [affirmative,] then plaintiffs have no cause of action under section 1983 to redress alleged violations of the Act." *Thompson v. Binghamton,* 546 F.2d at 1183.

 Plaintiffs again cite section 1437 for the proposition that it confers a federal statutory right to decent, safe and sanitary housing. The Court, however, is persuaded, as was the court in *Perry,* that section 1437 is a statement of policy and does not create an enforceable federal statutory right. *Perry v. Housing Authority,* 664 F.2d at 1217. Nothing in the statute itself or its legislative history explicitly mandates state officials to act in accordance with particular statutory standards, which is a critical indicia that a federal right was created. *See Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1 at 20, 28, 101 S.Ct. 1531 at 1541, 1545, 67 L.Ed.2d 694 (1981). Furthermore, plaintiffs can cite to no case authority standing for the proposition that this statute creates such a right. The only cases plaintiffs cite view this section as a policy statement. The Court concludes that this section of the USHA was intended as a precatory statement of Congressional preference. *See Samuels v. D.C.,* 770 F.2d at 196 (D.C.Cir. August 6, 1985) (see the language of the court construing the Supreme Court's holding in *Pennhurst* ).

The Court's conclusion was recently discussed by our Court of Appeals in *Samuels v. D.C.:*

> We do not believe ... that an individual public housing tenant could bring a section 1983 action for a public landlord's random and unauthorized failure to maintain properly her dwelling unit on the theory that such action violates the provision of the Act which calls for "decent, safe and sanitary dwellings." 42 U.S.C. § 1437 ... Such a limit on the availability of section 1983 to challenge PHA action is entirely reasonable given the congressional design of federally-funded public housing. Nothing in the language or history of the Act indicates that Congress intended the broad policy provisions of the Act to create a federal remedy for every aspect of public landlord-tenant relations ... and we would be extremely reluctant to read those provisions to create a federal warrant of habitability enforceable under section 1983 in individual landlord-tenant disputes.

770 F.2d at 201 (D.C.Cir.1985). *See also, Alexander v. Department of Housing and Urban Development,* 555 F.2d 166 (7th Cir 1977), *aff'd,* 441 U.S. 39, 99 S.Ct. 1572, 60 L.Ed.2d 28 (1979).[7] Based on the foregoing, the Court finds that plaintiffs have not demonstrated that section 1437 gives them a substantive federal statutory right enforceable under section 1983.

 Next, plaintiffs contend that section 1437d(*l* )(2) creates federal rights enforceable under section 1983. This section requires that each public housing agency use leases which "obligate the public hous-

---

**7.** Section 1437 differs markedly from the statutory provision at issue in *Samuels v. D.C.* There, the Court held that section 1437d(k) of the USHA, which required local PHAs to establish an administrative grievance procedure, was intended to create enforceable section 1983 rights within the meaning of *Pennhurst. Samuels v. D.C.* at 197. The court, however, reached this decision only after finding that the extensive legislative history and statutory language evidenced clear Congressional intent to impose mandatory obligations on the local PHAs. It is relevant that the court distinguished its holding from the holding in *Perry* which dealt with section 1437 stating:

> *Perry* simply held that Congress did not intend the broad policy provisions of the Act to create specific rights enforceable under section 1983. *See Perry,* 664 F.2d at 1217–18. That conclusion, which follows directly from *Pennhurst,* does not control the plaintiffs' attempt in this case to enforce a detailed and explicitly mandatory provision of the Act.

*Samuels v. D.C.,* at 198–99, n. 12. As to section 1437, there is nothing even slightly analagous to the scheme set forth in section 1437d(k).

ing agency to maintain the project in a decent, safe, and sanitary condition." 42 U.S.C. § 1437d($l$)(2). Plaintiffs argue that the obligation to utilize this type of lease somehow grants them a right to bring an action in federal court based on an alleged breach of the underlying lease. They concede that the state courts are the usual forums for actions alleging breach of lease agreements; however, they request the court to create an exception to this well-established precedent on the ground that the breaches complained of are not minor. They maintain that the magnitude of the breaches demonstrates that the District defendants recognize no obligation to maintain Fort Dupont in a decent, safe, and sanitary condition. As remedies, they request specific performance of the leases and rent abatement.

The Court agrees with defendants that actions for breach of lease agreements belong in the states courts and declines to create the novel exception urged by plaintiffs. As expressed by our Court of Appeals:

> [w]e are compelled to recognize that the stated claims are typical of the landlord-tenant relationship, local in character and generally reserved for resolution by the state courts. Complaints of ... improper maintenance ... are cognizable in the state courts, but have no basis for remedy under federal law.

*Shivers v. Landrieu*, 674 F.2d 906, 912 (D.C.Cir.1981). Moreover, there is no evidence that plaintiffs have attempted to vindicate their rights under the leases in the local courts and certainly no evidence to suggest that plaintiffs would be precluded from doing so. Furthermore, this particular statutory provision only speaks to what the lease must contain and HUD is not a party to the lease agreements.

Finally, as defendants argue, it is well-established that plaintiffs have no constitutional right to housing of a particular quality. *Lindsey v. Normet*, 405 U.S. 56, 74, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972); *See also, Stone v. District of Columbia*, 572 F.Supp. 976 (D.D.C.1983). Finding that section 1437d($l$)(2) does not create federal statutory rights and that plaintiffs have not demonstrated that they have a constitutional right to decent, safe, and sanitary housing, the Court concludes that plaintiffs' section 1983 claim must be dismissed. Accordingly, plaintiffs' fifth claim for relief will be dismissed for failure to state a claim upon which relief may be granted.

In their sixth claim for relief, plaintiffs argue that they have stated a valid section 1983 claim on the ground that they are being relocated from Fort Dupont to other allegedly substandard housing in violation of their federal rights. They maintain that section 1437p(b)(2) of the USHA obligates the District to relocate them to standard housing as they have allegedly been displaced because of the demolition of Fort Dupont. 42 U.S.C. § 1437p(b)(2). They also contend that they have been relocated without sufficient prior notification and the opportunity to select or contest the relocation units, in violation of their right to procedural due process under the Fifth Amendment to the Constitution. Again, the Court is of the opinion that plaintiffs have failed to demonstrate that their relocation implicates any federal rights which section 1983 actions were designed to vindicate.

At the outset, it is critical to note that plaintiffs' reliance on section 1437p(b)(2) is misplaced. This section is only relevant once a demolition application has been approved and plaintiffs are displaced pursuant to the approved demolition. Since no demolition application has been approved, section 1437p(b)(2) is irrelevant. As nothing in the legislative history or in the statutory provision itself supports the proposition that a court may imply that demolition of a public housing project has occurred and that requirements of section 1437p(b)(2) become operable, the Court declines to accept the argument of plaintiffs that the present condition of Fort Dupont is analogous to a state of demolition. This being so, the Court determines that no

federal statutory right under section 1437p(b)(2) has been implicated.[8]

■ Nevertheless, plaintiffs contend that the District's decision to relocate them is violative of procedural due process under the Fifth Amendment. Plaintiffs cite no case authority to support their position. While plaintiffs' preferences may not be in complete accord with relocation plans, the Court is not persuaded that such dissatisfaction implicates federal constitutional rights. As stated earlier, there is no constitutional right to be housed in a particular unit of a particular qualitative character. *Lindsey v. Normet,* 405 U.S. 56, 74, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972). Moreover, plaintiffs' dissatisfaction with relocation efforts concerns actions on the part of the District, not the federal, defendants. The federal defendants play virtually no role in tenant placement or relocation. Rather, such decisions are solely part of the District's administrative responsibility. Hence, the federal defendants cannot be said to have violated any of plaintiffs' alleged constitutional rights. Furthermore, plaintiffs have framed their request for relief only against the District.

More importantly, however, plaintiffs have not demonstrated that they have been deprived of procedural due process, or any constitutional right for that matter. It appears that the District has a formal mechanism for dealing with complaints concerning housing placement. Specifically, NCHA Rules and Regulations provide at section 2.12(3):

> Any tenant or applicant for NCHA housing who believes himself to be aggrieved or adversely affected by a decision of a PMA/NCHA official may file with the Administrator of PMA a complaint requesting an administrative determination of his/her rights.

Plaintiffs neither argue that the procedure is unconstitutional nor that they have in any way been precluded from utilizing it. For these reasons, the Court cannot discern why plaintiffs have not availed themselves of this established mechanism designed specifically to handle disputes of this type.

It appears then that absent any evidence that the District's formal mechanism is inadequate, plaintiffs' concerns regarding relocation are fully protected. The federal court is just not the proper forum to resolve plaintiffs' complaints concerning relocation. As the Court finds that plaintiffs' claims do not implicate any federal rights as required in order to state a valid claim under section 1983, the sixth claim for relief will be dismissed.[9] In sum, the plaintiffs have not demonstrated that this court has jurisdiction pursuant to 28 U.S.C. § 1337.

## C. *Annual Contributions Contract*

■ Sections 1437c and 1437g of the USHA authorize the Secretary to make Annual Contributions Contracts with public housing agencies to assist them in the creation and maintenance of low-rental projects. HUD has entered into such contracts with the District under which the District promises to comply with the USHA and relevant HUD regulations. Plaintiffs contend that the District has breached the ACC by failing to provide them with standard housing at Fort Dupont and at locations to which they are being relocated, 42 U.S.C. § 1439(d)(1) and 1437a(b)(1), by permitting the unwarranted demolition of Fort Dupont, 42 U.S.C. § 1437p, and by failing to prevent the arbitrary relocation of tenants from the project, 42 U.S.C.

---

**8.** Since plaintiffs have relied on an inapplicable statutory provision, the Court makes no ruling as to whether they have standing to bring either a private right of action on section 1983 action based on 42 U.S.C. § 1437p(b)(2).

**9.** Plaintiffs also contend that they are being relocated involuntarily. As defendants presented, however, in order for a tenant to be dispossessed from a particular unit, the District defendants must first serve the required notice to quit, and then file suit for possession in the Landlord Tenant Branch of the District of Columbia Superior Court. No plaintiff has submitted evidence of receipt of such notification that either procedure has been commenced. Should this occur, however, it appears that the issue should be resolved in the local, not the federal, courts.

§ 1437p(b)(2). They maintain that the ACC imposes an obligation on HUD to monitor and enforce the District's performance of its obligations under the ACC and, as third party beneficiaries of the ACC, they have the right to bring an action to enforce it against HUD. Plaintiffs sue not on grounds that the ACC provides them with an implied private right of action against HUD but on the theory that as third party beneficiaries, they can directly assert an action against HUD for its breach of obligations under the ACC.

In opposition, the federal defendants argue that the ACC simply memorializes the terms and conditions under which the federal government agrees to provide assistance to the particular local housing authority and it does not create any obligations owed to plaintiffs by HUD. The federal defendants conclude that if plaintiffs have any remedy for breach of contract, it lies exclusively against the District, not the federal defendants.

Plaintiffs cite no provision of the ACC which would impose an obligation on HUD to ensure that plaintiffs are provided with standard housing. Rather, the provisions cited by plaintiffs direct the District, not HUD, to operate the projects for the purpose of providing decent, safe, and sanitary dwellings [10] and to maintain its projects in good order, repair, and condition.[11] The only provision of the USHA which appears to afford tenants any opportunity to contest the condition of housing is 42 U.S.C. § 1437d(l) which directs the District to utilize leases that require that housing be maintained in a decent, safe, and sanitary condition. Plaintiffs have not argued that the District has failed to use such leases, only that the District has not complied with the lease terms.

Nevertheless, plaintiffs contend that *Ashton v. Pierce*, 716 F.2d 56 (D.C.Cir. 1983), as amended, 723 F.2d 70 (D.C.Cir. 1983), stands for the proposition that plaintiffs are third party beneficiaries of the ACC and, therefore, they are entitled to bring an action against HUD to enforce and monitor the "decent, safe, and sanitary" standard set forth in the ACC, the USHA, and HUD regulations. The Court finds, however, that *Ashton* is distinguishable. In *Ashton*, the plaintiff tenants brought an action seeking an order to require HUD to monitor and enforce the local PHA's compliance with its Lead-Based Paint Prevention Act (LPPA), 42 U.S.C. §§ 4801–4846, and its regulations. The court determined that the tenants could require HUD to monitor PHA compliance with the LPPA under a third party beneficiary theory similar to the one raised here by plaintiffs; however, the court "did so ... only in light of Congress' clear intent to require such enforcement." *Samuels v. D.C.*, at 201, n. 14. It appears that what persuaded the court was not simply a finding that plaintiffs were third party beneficiaries under the ACC but that the LPPA itself, and its legislative history, expressly mandated that the Secretary establish procedures to eliminate the dangers of lead poisoning. In other words, the enforceable duty which permitted the plaintiffs in *Ashton* to proceed against HUD on a breach of contract theory stemmed from the express command of the LPPA, not the terms of the ACC or plaintiffs' status as third party beneficiaries.

With respect to the instant case, as stated heretofore, the Court is not convinced that plaintiffs can proceed against HUD solely on the grounds that they derive benefits from the ACC. *Perry v. Housing Authority*, 664 F.2d 1210, 1218 (4th Cir.

---

**10.** Section 201 of the ACC states in pertinent part:

> The Local Authority shall at all times operate each project (1) solely for the purpose of providing decent, safe, and sanitary dwellings ... within the financial reach of families of Low Income, (2) in such manner as to promote serviceability, efficiency, economy, and

stability, and (3) in such a manner as to achieve the economic and social well-being of the tenants thereof.

**11.** Section 209 of the ACC provides:

> The Local Authority shall at all time maintain each Project in good repair, order, and condition.

1981). Unlike the statutory provision in *Ashton,* there is no similar express obligation on HUD to monitor and enforce the policy provision set forth in section 1437.[12] In this regard, the Court of Appeals noted in *Samuels v. D.C.:* "To the extent that plaintiffs' third-party beneficiary theory could be extended to establish a federal cause of action for such discrete and random disputes, we think it would be plainly inconsistent with the structure of federal housing law." At 201, n. 14. Without any evidence of any duty on HUD, the Court is reluctant to read one into the contract. Plaintiffs have simply not demonstrated a cognizable claim against HUD for the alleged breach of the ACC by the District. Should plaintiffs have any claims for breach of contract, they would lie against the District, not HUD.[13]

### D. *Conclusion*

In view of the dismissal of plaintiffs' federal claims, the Court declines to exercise pendent jurisdiction over plaintiffs' local law claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Stone v. D.C.,* 572 F.Supp. 976, 981, n. 4 (D.C.Cir.1983).[14]

Based on the foregoing and finding that plaintiffs' claims are not properly before this court, the Court will grant the motions of the defendants to dismiss this entire action on the grounds that subject matter jurisdiction is lacking.[15]

An Order consistent with this Memorandum Opinion will be entered this date.

12. This is not to imply, however, that HUD could not terminate the grant of federal funds to the District upon the grounds that it is not properly complying with the terms of the ACC.

13. Plaintiffs also cite *Knox Hill Tenant Council v. Washington,* 448 F.2d 1045 (D.C.Cir.1971) to support their position. The Court, however, views the holding of this case differently. In *Knox Hill,* the Court of Appeals narrowly held that the District Court erred in holding that it lacked jurisdiction on sovereign immunity grounds. In that case there was no discussion as to whether plaintiffs were third party benefi-

ciaries to the ACCs or whether they had a private right of action or cognizable federal rights under section 1437 of the USHA.

14. Plaintiffs have not maintained that there exists any barrier to their pursuit of the local law claims before the local courts.

15. Having determined that the policy statement set forth in section 1437 does not confer federal rights in plaintiffs' favor, the Court does not reach the merits of plaintiffs' contentions. The Court has only determined, as a question of law, that it lacks jurisdiction over plaintiffs' claims.