Lorene DESSIN, Katrina Tarver, and Tonya Jackson, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

HOUSING AUTHORITY OF the CITY OF FORT MYERS, and Flossie Riley, in her official capacity as Acting Director of the Housing Authority, and the United States Department of Housing and Urban Development, and Jack Kemp, as Secretary of the United States Department of Housing and Urban Development, Defendants.

No. 90–232–Civ–T–Ftm–15D.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 26, 1990.

Donald Isaac, Christine Elizabeth Larson, Florida Rural Legal Services, Inc., Ft. Myers, Fla., for plaintiffs.

Harold Norman Hume, Jr., Henderson, Franklin, Starnes & Holt, P.A., Ft. Myers, Fla., for Housing Authority of City of Ft. Myers, Flossie Riley.

James E. Blackman, U.S. Dept. of HUD, Associate Regional Counsel, Atlanta, Ga., for U.S. Dept. of Housing and Urban Development.

## ORDER

CASTAGNA, District Judge.

Plaintiffs bring this action for injunctive relief to enjoin defendants from taking any actions in furtherance of the demolition or disposition of the Southward Village Annex public housing development [Southward Village], a low income housing project. The complaint includes causes of action under the United States Housing Act, 42 U.S.C. § 1437p, the due process clauses of the fifth and fourteenth amendments to the United States Constitution, and the Administrative Procedure Act, 5 U.S.C. § 702.

Now before the Court is plaintiffs' motion for a preliminary injunction prohibiting the demolition or disposition of the building pending the litigation of this cause (D-4).

## I.

Southward Village was built with funds from the United States Department of Housing and Urban Development [HUD] in 1970 to provide subsidized housing to low income residents of the Fort Myers area. The 98 total residence units are made up of 20 one bedroom units, 20 two bedroom units, and 58 three bedroom units. The building has been and is under the management of the Housing Authority of the City of Fort Myers [the Authority].

Plaintiffs complain that Southward Village has suffered for years from inadequate maintenance by the Authority, which has allowed the steady and unnecessary decline of the building. Plaintiffs state that, among other maintenance deficiencies, serious roof problems have been ignored, allowing water to leak into the building damaging the ceiling, walls, floors, and wiring. Moreover, plaintiffs charge that a combination of the Authority's failure to fill vacant units and its failure to afford proper security have allowed damage to the property by vandalism.

The Authority responds that the building's problematic history is a result not of neglect by the Authority, but of flaws in the design and construction of the building. The Authority also relates that the building has been a center for drug trafficking activities, which has played a role in its decline. Although it is not clear whether it would now be economical to renovate Southward Village, there is no dispute that the building in its current condition is uninhabitable. Among other problems, Southward Village now has no doors or windows.

Plaintiffs state that on March 14, 1989 the Authority sent a letter to HUD requesting permission to demolish Southward Village. The record does not include a copy of this letter. Plaintiffs also state that none of the tenants of Southward Village have ever been notified or consulted on this matter. In March and April of 1989 the Southward Village residents were informed that they must relocate to other housing operated by the Authority. They were not told that Southward Village would be demolished. Plaintiff Dessin assumed that the building was to be renovated. By August of 1989 Southward Village was vacated.

## II.

■ The responsibilities of HUD and of public housing authorities which intend to dispose or demolish public housing are listed at 42 U.S.C. § 1437p. Without fully reciting the requirements of this section, it appears that plaintiffs are correct in their claims that defendants have not yet adequately consulted with the tenants of Southward Village, as required by section 1437p(b)(1), see Krislov, *The Republican Civic Tradition: Ensuring Tenant Consultation Before Public Housing is Demolished or Sold,* 97 Yale L.J. 1745 (1988), and have not yet developed a plan for provision of an additional unit of public housing for each to be lost, as required by section 1437p(b)(3). The record is not clear as to whether defendants have adequately considered alternatives to demolition or disposition as required by section 1437p(a). Plaintiffs claim that the relocation of Southward Village's former tenants was a result of the Authority's proposed plan to demolish and dispose of the property is not supported by the record, which shows instead that the property was vacated on direction from HUD because of its unsafe and uninhabitable condition.

Plaintiffs have not shown that HUD has or will approve the Authority's plan to demolish Southward Village and sell the property to a tenant's trust, without first meeting all necessary prerequisites. All that HUD has apparently done is conditionally approve the Authority's scheme to transfer the property to a trust, instead of to the tenants directly, as falling within the meaning of sale of a project to its tenants for purposes of 42 U.S.C. § 1437c(h).[1] Similar-

---

1. Given the grounds upon which the Court dis-

poses the pending motion, it is unnecessary to

ly, the record does not show that the Authority has taken any action to demolish or dispose of Southward Village without first obtaining HUD's approval.[2] Clearly, the Authority's plan is to both demolish the building and dispose of the property, but they are now in the process of seeking HUD's approval to do so, and it has not been shown that they will take any actions to demolish or dispose the property until and unless their application is approved. The only legal obligation on the Authority is to take no actions toward this plan until it is approved by the Department, 42 U.S.C. § 1437p(d), and plaintiffs have not shown that the Authority is likely to act contrary to this obligation.

This record compels the conclusion that plaintiffs' action has not yet ripened. Accord *Edwards v. District of Columbia*, 628 F.Supp. 333 (D.D.C.1985), *aff'd*, 821 F.2d 651 (D.C.Cir.1987). The Authority has yet to take any action for which it needs HUD approval, see 42 U.S.C. § 1437p(d), and HUD has yet to approve any application for demolition and disposition contrary to law, see 42 U.S.C. § 1437p. The Court cannot presume that these defendants will knowingly violate their legal duties when they have not as yet done so, and when the record does not clearly show that such action is imminent. At this juncture, the administrative decision-making process must be allowed to proceed unimpeded by judicial interference until the necessary elements of plaintiffs' cause of action are in place.

### III.

The Court is aware that the law regulating the demolition and disposition of public housing has evolved considerably since the opinions of the District and Circuit Courts in the *Edwards* case. The most dramatic change is the addition of subsection (d) to section 1437p, which provides that "A public housing agency shall not take any action to demolish or dispose of a public housing project or a portion of a public housing project without obtaining the approval of the Secretary and satisfying the conditions specified in [prior subsections]." Subsection (d) was added by section 121(a) of the Housing and Community Development Act of 1987, Pub.L. 100–242, 101 Stat. 1815, "to clarify that no PHA [public housing authority] shall take any steps toward demolition and disposition without having satisfied the statutory criteria. This provision is intended to correct an erroneous interpretation of the existing statute by the United States Court of Appeals for the D.C. Circuit in *Edwards v. District of Columbia* and shall be fully enforceable by tenants of and applicants for the housing that is threatened." H.Conf.Rep. No. 100–426, 100th Congress, 1st Sess., *reprinted in* 1987 U.S.Code & Admin.News 3458, 3469. This congressional clarification has been interpreted to allow a cause of action by current or potential tenants where an authority has acted to constructively demolish public housing by failure to maintain. See *Tinsley v. Kemp*, 750 F.Supp. 1001 (W.D.Mo.1990); *Concerned Tenants Ass'n of Father Panik Village v. Pierce*, 685 F.Supp. 316, 319–321 (D.Conn.1988). These decisions provide that a de facto demolition of public housing as a result of a public housing authority's failure to maintain and repair amounted to demolition within the meaning of the public housing laws, and therefore would have to meet the requirements of section 1437p. With due respect to these authorities, and

---

further discuss this section, and particularly unnecessary to resolve the parties' sharp disagreement as to the effect of the first clause of this section.

2. The record does not indicate that the Authority's actions to vacate Southward Village were a part of the plan to dispose of the building rather than a result of the building's pronounced state of disrepair. A letter to the Authority from a HUD official dated August 21, 1989 states that "[b]ecause the project is neither decent, safe, or

sanitary, we also expected the remaining tenants to be relocated. The current environment poses a threat to the health and safety of the residents of this community and every effort must be made to vacate this project." In light of this communication the Court finds that the project was vacated because it was unsafe, and not as a result of the Authority's consideration of a plan to demolish and dispose of the property.

only after careful consideration of each, this Court disagrees.

As an initial matter, if Congress intended to provide public housing tenants with a cause of action for failure to maintain the property, it easily could have said so in plainer terms. The words used are demolish or dispose, and the public housing agency is forbidden to "take any action to demolish or dispose of a public housing project" without meeting the requirements of section 1437p. HUD has interpreted demolition to mean "the razing, in whole or in part, of one or more permanent buildings of a public housing project." 24 C.F.R. § 970.3 (1988). This construction must be given "considerable weight" by the courts. *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

Moreover, the interpretation of the statute must begin with its plain language. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978). The ordinary meaning of the language of the statute will control in all cases unless it is found contrary to a clearly expressed legislative intention. *North Dakota v. United States*, 460 U.S. 300, 103 S.Ct. 1095, 75 L.Ed.2d 77 (1983); *American Tobacco Co. v. Patterson*, 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982). The ordinary meaning of demolish is "to pull or tear down (as a building): raze ... to break to pieces or apart [usually] with force or violence...." Webster's Third New International Dictionary 600 (1976). The definitions provided by the duly promulgated agency rule and by the dictionary are consistent. Neither is sufficiently broad to encompass the facts of the present case.[3]

### IV.

Plaintiffs' complaint is only legally sufficient if it is allowed to rely upon future events which may or may not occur. Under the ripeness doctrine, which "involves both jurisdictional limitations imposed by Article III's requirement of a case of [sic] controversy and prudential considerations arising from problems of prematurity and abstractness that may present insurmountable obstacles to the exercise of the court's jurisdiction," *Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir.1984), the matter is not yet appropriate for judicial action. The application of the ripeness doctrine is particularly appropriate where, as here, plaintiffs challenge proposed actions of administrative bodies where the decision-making process is not yet complete and no wrongful actions have been taken. See generally 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532.6 (2d ed. 1984). As plaintiffs' action is not yet ripened, it is

ORDERED:

Plaintiffs' motion for preliminary injunction is DENIED, and this cause is DISMISSED, without prejudice.

DONE AND ORDERED.

---

**3.** Admittedly, a more difficult case would be presented if the Authority had vacated Southward Village pursuant to a general plan towards the demolition of the project, but the record before the Court shows that this is not what occurred.