Laticia FARLEY

v.

PHILADELPHIA HOUSING AUTHORI-
TY; Floyd Baker; Pamela Dunbar;
Claude Ross,* Appellants.

No. 96–1286.

United States Court of Appeals,
Third Circuit.

Argued Oct. 28, 1996.

Decided Dec. 17, 1996.

* Amended Notice of Appeal filed 4/8/96.

Denise J. Baker (argued), Philadelphia Housing Authority, Philadelphia, PA, for appellant.

Michael Donahue (argued), Community Legal Services, Philadelphia, PA, for appellees.

Before: SCIRICA and COWEN, Circuit Judges and FEIKENS, District Judge.**

## OPINION OF THE COURT

COWEN, Circuit Judge.

Appellants, the Philadelphia Housing Authority and its housing management personnel, Floyd Baker, Pamela Dunbar, and Claude Ross (collectively "the PHA"), appeal the March 8, 1996, order of the district court granting summary judgment to Laticia Farley, a public housing tenant, and denying their cross-motion for summary judgment. The district court held that Farley had a cognizable claim under 42 U.S.C. § 1983, and ordered the PHA to fully comply with the arbitration award that directed it to make repairs to Farley's apartment. The PHA contends that the district court did not have jurisdiction to enforce the arbitration award, and erred in holding that Farley had a cognizable federal cause of action under § 1983 to enforce a public housing grievance award pursuant to 42 U.S.C. §§ 1437d(k) and 1983. We hold that the parties did not intend to limit enforcement of grievance awards to state court. We also hold that Farley can bring a § 1983 action to enforce her federal right to implement the grievance procedure provided for in the Housing Act.

### I.

### A.

The United States Housing Act, 42 U.S.C. § 1437 *et seq.*, was designed to provide "decent, safe, and sanitary dwellings" within the financial reach of families of low income. 42 U.S.C. § 1437 (1994). In order to encourage the construction and operation of low-income housing, the Act authorizes the Department of Housing and Urban Development (HUD) to provide grants, low-interest loans and tax exemptions to local public housing agencies known as PHAs. Because they receive federal subsidies, the PHAs are able to charge below-market rent to eligible low-income tenants. In exchange for receiving public funding, the local PHAs are required to operate public housing in compliance with the provisions of the Act.

Section 1437d(k) is the provision at issue in this appeal. As amended in 1983, this section provides that each public housing agency must implement an administrative grievance

** Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

procedure for the resolution of all tenant disputes concerning adverse PHA action.[1] It sets forth the grievance/arbitration procedure that the local PHAs must follow, as well as the rights to which tenants are entitled under that procedure.

The history of § 1437d(k) and its accompanying regulations dates back to 1971, when HUD issued a series of public housing circulars requiring the PHAs to recognize certain minimum tenant rights and provide an administrative grievance forum for tenant complaints concerning adverse PHA action. *See* U.S. Dept. Of Housing and Urban Development Circulars RHM 7465.8 and 7465.9. In 1975, HUD codified the requirements from the circulars in the Code of Federal Regulations. The circulars are currently codified in 24 C.F.R. § 966 (1994). These regulations require the local PHAs to establish and implement grievance procedures that provide tenants with hearings if they dispute any PHA action or inaction concerning lease provisions or local regulations. *See* 24 C.F.R. §§ 966.50, 966.51(a), 966.53(a) (1994). The City of Philadelphia's specific grievance procedure is outlined in the consent decree entered in *Brown v. Philadelphia Housing Authority*, No. 72–2083 (E.D.Pa. Mar. 15, 1974) ("*Brown* consent decree"); *see also* Stipulation and Order Supplementing and Clarifying the Stipulation and Order of June 14, 1974, *Brown v. Philadelphia Housing Authority*, 72–2083 (E.D.Pa. Apr. 24, 1978).

Farley seeks to enforce a specific regulation which states that grievance awards are binding on the local housing authorities and requires them to "take all actions, or refrain from any actions, necessary to carry out the decision [of the hearing officer]." 24 C.F.R. § 966.57(b) (1994). Her cause of action

arises strictly under § 1437d(k). Regulation § 966.57(b) merely interprets that section.

## B.

Farley is a tenant of a building in Philadelphia that is managed by the Philadelphia Housing Authority. She filed administrative grievances with PHA, seeking a number of repairs to her rental unit. She also sought an abatement of rent. Farley claimed that the repairs sought were necessary to prevent water from leaking into the basement of her rental unit. These repairs included repair or replacement of the heater, replacement of the windows, repair of the holes in the basement walls, repair of the leaking pipe in the basement, and repairs as necessary to remedy the low water pressure throughout her unit.

An arbitrator held a grievance hearing and entered an award in Farley's favor. The award stated:

1. The Philadelphia Housing Authority shall inspect and repair all items of a non-contract nature within thirty (30) days of the date of this Award. Any matters which require contract work shall be noted and written advice thereof shall be provided Ms. Farley and her counsel within thirty (30) days of this Award. All contracted work shall be completed within ninety (90) days of the date of this Award.

2. Ms. Farley is awarded a Ten (10%) percent abatement of rent for the period July 1, 1995 through such time as the requested repairs are completed. The abatement shall be credited to Ms. Farley's rent account.

App. at 159.

The PHA did not make the required repairs; nor did it give Farley the rent abate-

---

1. Section 1437d(k) provides:

The Secretary shall by regulation require each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will—

(1) be advised of the specific grounds of any proposed adverse public housing agency action;

(2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (*l*) of this section;

(3) have an opportunity to examine any documents or records or regulations related to the proposed action;

(4) be entitled to be represented by another person of their choice at any hearing;

(5) be entitled to ask questions of witnesses and have others make statements on their behalf; and

(6) be entitled to receive a written decision by the public housing agency on the proposed action.

42 U.S.C. § 1437d(k) (1994).

ment. Thereafter, Farley filed an action in the district court to enforce her grievance award. The matter was brought for resolution in the district court by cross-motions for summary judgment. The PHA argued that the district court lacked jurisdiction to enforce the award or grant relief on what was basically a garden-variety state landlord/tenant dispute. Holding that it had jurisdiction to hear the matter, the district court granted Farley's motion for summary judgment and denied the PHA's cross-motion for summary judgment. This appeal followed.

## II.

■ The jurisdiction of the district court to hear this matter and enter judgment on the arbitrator's award, is the issue on appeal. The district court entertained subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1337, 1343(a)(2), (3), (4) and §§ 2201, 2202. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over questions of subject matter jurisdiction and the district court's grant or denial of summary judgment. *See Clark v. Clabaugh,* 20 F.3d 1290, 1292 (3d Cir.1994); *see also Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994); *Brown v. Francis,* 75 F.3d 860, 864 (3d Cir.1996).

## III.

The PHA asserts that the district court had no jurisdiction under § 1983 to enforce Farley's grievance award. It argues that under the *Brown* consent agreement, the PHA consented only to the jurisdiction of the Pennsylvania state courts to enforce arbitration awards. It further contends it had no reasonable expectation that it would be called upon to defend arbitration enforcement proceedings in federal court.

■ In support of its argument, the PHA states that the express terms of *Brown* incorporate the entire Pennsylvania Arbitration Act of 1927. It also points to a provision in the 1978 amendment to *Brown* that reads, "[i]f either party should appeal an arbitrator's award, such appeal shall be governed by the provisions of the Pennsylvania Arbitra-

tion Act of 1927." Stipulation and Order Supplementing and Clarifying the Stipulation and Order of June 14, 1974, App. at 55, para. 3. The PHA argues that inclusion of this paragraph in the *Brown* consent agreement evidences the parties' intent to incorporate the entire Pennsylvania Arbitration Act of 1927. The PHA further cites a provision of the Pennsylvania Arbitration Act that states, "[a]n appeal may be taken from an order confirming, modifying, correcting, or vacating an award, or from a judgment entered upon an award, in accordance with the existing law in respect to appeals to the Supreme and Superior Courts." 5 P.S. § 175(a). Also brought to our attention is a provision from the Pennsylvania Act stating that all grievance awards "shall have the same force and effect, in all respects as, and be subject to, all the provisions of law relating to a judgment in an action at law, and it may be enforced as such in accordance with existing law." 5 P.S. § 174. In addition, the PHA cites to a provision that states, "[t]he provisions of this act shall apply to any written contract to which the Commonwealth of Pennsylvania, or any agency or subdivision thereof, of any municipal corporation or political division of the Commonwealth shall be a party." 5 P.S. § 176. The PHA argues that, taken together, the above-cited provisions indicate that the parties consented solely to the jurisdiction of Pennsylvania state courts to enforce arbitration awards. We disagree.

■ The *Brown* consent decree is a settlement agreement between the PHA and its tenants. We, therefore, construe it as a contract. *See Pennwalt Corp. v. Plough, Inc.,* 676 F.2d 77, 79 (3d Cir.1982). The scope of the *Brown* decree "must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). Reading the above provisions (paragraph 3 of the *Brown* amendments and §§ 174, 175, and 176 of the Pennsylvania Act) and looking to the entire documents, we find nothing in the *Brown* consent agreement demonstrating that the parties intended that enforcement actions be brought exclusively in state court.

The *Brown* decree is completely silent concerning the method for enforcement of arbitration awards. Paragraph 3 of the agreement does not incorporate the entire Pennsylvania Arbitration Act. It incorporates the Act only insofar as the Act concerns appeals of the award of an arbitrator. The issue before the district court was not the propriety of the arbitrator's resolution of the grievance, but only the enforcement of the award arising from that grievance. Looking to the four corners of the consent agreement, we conclude that the parties to that agreement intended that state court procedures would apply only to the appeal of arbitrators' awards, not the method by which awards were to be enforced.

Finally, we cannot accept the position of the PHA that the provisions of the Arbitration Act are automatically incorporated into every contract involving a Commonwealth agency. *See Pennsylvania Turnpike Comm'n v. Sanders & Thomas, Inc.,* 461 Pa. 420, 336 A.2d 609, 615 (1975) (incorporation of Act has occurred only where the contract contained an arbitration clause); *see also Monte v. Southern Delaware County Auth.,* 321 F.2d 870 (3d Cir.1963). In *Monte,* this Court stated that it would not "oust federal jurisdiction ... merely because the Authority, as an arm of the state, is a party to this agreement." *Id.* at 873. We held that under the specific *Monte* contract, arbitration awards could be confirmed only in the Pennsylvania Court of Common Pleas. We found that the parties in *Monte* intended to preclude federal court jurisdiction because the agreement in *Monte* contained a provision that incorporated the entire Pennsylvania Arbitration Act. Unlike the agreement in *Monte,* the *Brown* consent decree does not contain any such statement or any other indicia of intent to foreclose the enforcement of arbitration awards in federal court.

The PHA cites to *DePaul v. Kauffman,* 441 Pa. 386, 272 A.2d 500, 506 (1971) for the proposition that statutory and regulatory provisions of law in force at the time the *Brown* consent decree was entered became part of that agreement with the same effect as if expressly incorporated in its terms. Unlike the instant case, *DePaul* involved a constitutional challenge to the Pennsylvania Rent Withholding Act. The appellants in that case claimed the Act unconstitutionally impaired the obligation of contracts. The Pennsylvania Supreme Court rejected their claim, stating, "[a]s applied to leases entered into or renewed after the effective date of the Act, there can be no 'impairment', for the laws in force when a contract is entered into become part of the obligation of contract 'with the same effect as if expressly incorporated in its terms.'" *Id.* (quoting *Beaver County Bldg. & Loan Ass'n v. Winowich,* 323 Pa. 483, 187 A. 481, 484 (1936)). The court went on to say, "[w]ith regard to leases that predate the effective date of the Act, it must be borne in mind that 'the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as ... are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected.'" *Id.* (quoting *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 437, 54 S.Ct. 231, 240, 78 L.Ed. 413 (1934)) (alteration in original).

The resolution in *DePaul* is not precedent for the instant case. We do not conclude that the *Brown* consent decree automatically incorporates the Pennsylvania Arbitration Act. In order to determine whether the Pennsylvania Act was incorporated into the *Brown* consent decree we must consider the intent of the parties. *See Halderman v. Pennhurst State School & Hosp.,* 901 F.2d 311, 322 (3d Cir.), *cert. denied,* 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990). Nothing in *Brown* evidences the intent of the parties to incorporate the entire Pennsylvania Act. Even if the parties did intend to incorporate the entire Pennsylvania Act, (which we do not believe they did), the Pennsylvania Arbitration Act, like the *Brown* consent decree, does not contain any provisions or procedures regarding enforcement. The Act provides only that awards that have been confirmed, modified or corrected shall be judgments which "may be enforced as such in accordance with existing law." 5 P.S. § 174. Nothing in the Act requires PHA tenants to enforce their awards in state court.

## IV.

■ Section 1983 provides a remedial device to enforce rights under the United States Constitution and federal law. In *Maine v. Thiboutot,* 448 U.S. 1, 7–8, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980), the Supreme Court held that plaintiffs may invoke § 1983 to redress violations of federal statutory law by state actors. The Supreme Court has set forth two exceptions to this general rule. *See Pennhurst State School and Hosp. v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *see also Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). The *Pennhurst* exception applies where the statute did not create enforceable rights within the meaning of § 1983. *Pennhurst* holds that Congress must have intended for the federal statute at issue to create enforceable rights in the private party, not for it to merely state a preference or policy declaration. *Id.* at 19, 101 S.Ct. at 1541. Under the *Sea Clammers* exception, § 1983 cannot be invoked if Congress manifested in the statute itself an intent to foreclose its private enforcement. In *Sea Clammers,* the Court found that in enacting the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972 Congress devised comprehensive remedial schemes that provided for private actions and left no room for additional private remedies under § 1983. *See also Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984) (indicating that a § 1983 action would be inconsistent with Congress' carefully tailored remedial scheme in the Education of the Handicapped Act).

Following this framework, we look to the *Pennhurst* and *Sea Clammers* exceptions to determine whether Farley has an enforceable federal right. In doing so, we must analyze the relevant statutory provisions "in light of the entire legislative enactment." *Suter v. Artist, M.,* 503 U.S. 347, 357, 112 S.Ct. 1360, 1367, 118 L.Ed.2d 1 (1992). We must determine whether Congress intended the statutory provision to benefit the plaintiff. *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448,

107 L.Ed.2d 420 (1989). Further, the statutory language must be mandatory, not merely precatory in nature. *Pennhurst,* 451 U.S. at 18, 101 S.Ct. at 1540. Finally, the right may not be " 'too vague and amorphous' to be 'beyond the competence of the judiciary to enforce.' " *Golden State,* 493 U.S. at 106, 110 S.Ct. at 448 (quoting *Wright v. City of Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 431–32, 107 S.Ct. 766, 774–75, 93 L.Ed.2d 781 (1987)).

### A.

■ Farley's § 1983 claim does not fall within the *Pennhurst* exception. We conclude that by enacting 42 U.S.C. § 1437d(k), Congress intended to give public housing tenants a right to enforceable grievance awards. First, Farley, as a public housing tenant, is an intended beneficiary of the procedures outlined in § 1437d(k) and its accompanying HUD regulations. In another case involving the very same issue, the United States Court of Appeals for the District of Columbia examined the legislative history of § 1437d(k), as well as the enforcement history of the circulars that § 1437d(k) codified. *See Samuels v. District of Columbia,* 770 F.2d 184 (D.C.Cir.1985). The *Samuels* court found "Congress clearly intended to require local PHAs to provide an administrative grievance procedure for tenant complaints of adverse PHA action, and nothing in the structure or history of the [Housing] Act indicates that Congress intended to foreclose private enforcement of that obligation." *Id.* at 198. *Samuels* also found support in the fact that the provision "uniformly speaks of a tenant's *entitlement* to particular procedural protections in the face of adverse PHA action." *Id.* at 197.

Second, the language of § 1437d(k) and 24 C.F.R. § 966.57(b) is mandatory, specific, and clear. The language is not too vague or amorphous to be enforced by courts. The *Samuels* court noted that before the codification of § 1437d(k), several courts of appeal entertained tenant challenges to PHA action and inaction under the original grievance procedures as set forth in the circulars that pre-dated § 1437d(k). *See Samuels,* 770 F.2d at 198. These courts uniformly held

that the grievance procedures were mandatory and binding on the PHAs. *Id.* Likewise, we conclude that in enacting the grievance procedure under the Housing Act, Congress intended to impose mandatory obligations on PHAs. Section 1437d(k) and the accompanying regulations plainly set forth the grievance procedure that PHAs must follow. Section 1437d(k) is not a general policy section or a " 'nudge in the preferred direction[ ].' " *Pennhurst*, 451 U.S. at 19, 101 S.Ct. at 1541 (quoting *Rosado v. Wyman*, 397 U.S. 397, 413, 90 S.Ct. 1207, 1218, 25 L.Ed.2d 442 (1970)) (alteration added). Rather, § 1437 confers enforceable rights within the meaning of *Pennhurst* and § 1983.

### B.

Farley's claim also does not fall within the *Sea Clammers* exception. The Supreme Court has held that in enacting the U.S. Housing Act, Congress did not specifically foreclose a § 1983 remedy by enactment of a comprehensive scheme of remedial mechanisms. *See Wright v. City of Roanoke Redevelopment and Housing Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). Although *Wright* dealt with the Brooke Amendment, a provision under the Housing Act that imposes a rent ceiling on public housing, the Court also spoke generally about the Housing Act.

First, the Supreme Court cautioned that courts should not " 'lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right." *Id.* at 423–24, 107 S.Ct. at 770 (quoting *Smith v. Robinson*, 468 U.S. at 1012, 104 S.Ct. at 3468.) The Court then found support in the fact that "HUD itself has never provided a procedure by which tenants could complain to it about the alleged failures of PHA's to abide by … HUD regulations; nor has it taken unto itself the task of reviewing PHA grievance procedure decisions." *Id.* at 426, 107 S.Ct. at 772. The Court continued, "HUD thus had no thought that its own supervisory powers or the grievance system that it had established foreclosed resort to the courts by tenants." *Id.* The Court concluded that nothing in the Brooke Amendment or elsewhere

in the Housing Act evidences that Congress intended to supplant the § 1983 remedy. *Id.* at 429, 107 S.Ct. at 773. It also noted "the state-court remedy is hardly a reason to bar an action under § 1983, which was adopted to provide a federal remedy for the enforcement of federal rights." *Id.* Adhering to *Wright*, we must reject the PHA's argument that Farley should have litigated this garden-variety landlord/tenant case in state court.

The PHA argues that *Wright* is "not worthy of reliance," and we should disregard it. Appellant's Br. at 17. The PHA also implies that *Wright* has been put into question by a line of cases that has come after it, and is no longer good law. In making this assertion, the PHA cites specifically to *Suter v. Artist M.*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). The PHA contends, first, that *Suter* changed the state of the law by announcing that Congressional intent is the most important factor in implying a private right of action. We do not find this argument persuasive. Prior to *Suter*, the Supreme Court certainly found importance in ascertaining whether Congress intended to create private rights. Indeed, in *Wright*, the Court based its decision on its finding that Congress did not intend to preclude a § 1983 cause of action for the enforcement of tenants' rights secured by the Housing Act. *Wright*, 479 U.S. at 425, 107 S.Ct. at 771.

Second, the PHA argues that in the years following the *Wright* decision, the Supreme Court has disfavored implying private rights of action in spending statutes. Appellant's Br. at 43 (citing *Suter v. Artist M*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) (specific language in the Adoption Assistance and Child Welfare Act, a spending statute, did not create a federally enforceable right under § 1983)). Although Congress's key purpose behind the Housing Act was to provide funding for local housing authorities, the Supreme Court and other courts have found that Congress also intended to establish tenant rights. *See Wright v. City of Roanoke Redevelopment and Housing Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (plaintiffs could bring a § 1983 action to enforce Brooke Amendment of Housing Act which imposes a rent ceiling); *see also Sam-*

*uels v. District of Columbia,* 770 F.2d 184 (D.C.Cir.1985) (plaintiffs could bring § 1983 action to enforce grievance procedure under 1437d(k)); *Concerned Tenants Ass'n of Father Panik Village v. Pierce,* 685 F.Supp. 316 (D.Conn.1988) (plaintiffs could bring § 1983 action to enforce § 1437p, which mandates that local authorities obtain HUD approval of demolition).[2]

Moreover, although *Suter,* like this case, involved a spending statute, the specific statutory language at issue in *Suter* is completely distinguishable from the language in § 1437d(k). *Suter* involved a provision of the Adoption Assistance and Child Welfare Act, 42 U.S.C. § 671(a)(15), which provides that states must make "reasonable efforts" to prevent removal of children from their homes and to facilitate reunification of families where removal has occurred. The Court held that this language does not confer an enforceable right upon the Act's beneficiaries. Instead, it found that the statutory language "impose[d] only a rather generalized duty on the State." *Suter,* 503 U.S. at 363, 112 S.Ct. at 1370. By contrast, § 1457d(k) does not merely impose a general duty. Instead, it mandates the very grievance process that PHAs must follow and details the rights to which the tenants are entitled.

The Supreme Court did not *sub silentio* overrule *Wright* in *Suter.* It remains good law. *Wright* held that by enacting the Housing Act, Congress intended to grant enforceable rights to tenants of public housing. Nothing in *Suter* or any other case alters this conclusion.

## V.

The district court was correct that it had jurisdiction to enforce Farley's public housing arbitration award. Nowhere in the *Brown* consent decree did the parties intend

to limit enforcement of awards to state court. The district court was also correct that Farley, a public housing tenant, could maintain a § 1983 action to enforce her federal right to an enforceable grievance procedure as provided for in the Housing Act. We will affirm the May 8, 1996, order of the district court granting Farley's motion for summary judgment and denying the PHA's cross-motion for summary judgment.

---

**2.** PHA cites to *Edwards v. District of Columbia,* 628 F.Supp. 333 (D.D.C.1985), *aff'd* 821 F.2d 651 (D.C.Cir.1987) and *Concerned Tenants Ass'n Of Father Panik Village v. Pierce,* 685 F.Supp. 316 (D.Conn.1988) for the proposition that § 1437d contains lease requirements that do not create enforceable rights under § 1983. *Edwards* and *Concerned Tenants* did not involve § 1437d(k), the section addressed in this case. Rather, the

courts in *Edwards* and *Concerned Tenants* were addressing § 1437d(*l*)(2) which merely provides that PHAs should use leases that "obligate the public housing agency to maintain the project in a decent, safe, and sanitary condition." This provision, unlike § 1437d(k) which mandates specific grievance procedures, is only a broad policy statement, not a specific obligation.