**Wilson v. Bucci**

C.P. of Allegheny County, no. GD97-20740, AD98-000500.

*R. Bruce Carlson,* for plaintiff.
*Robert J. Bucci,* pro se.
*Leo Gerard Daly* and *Andrew F. Adomitis,* for defendant Allegheny Cty. Housing Auth.

WETTICK, *J.,* October 14, 1998—This is a lawsuit brought by a grandparent in her own right and on behalf of her grandchild to recover damages resulting from the child's alleged exposure to hazardous levels of lead-based paint at rental property that plaintiff and her grandson occupied pursuant to a section 8 lease. This section 8 housing rental assistance was administered by defendant Allegheny County Housing Authority.

Plaintiff's claims against the housing authority are brought under the Civil Rights Act of 1871 codified at 42 U.S.C. §1983 (1994), based on the housing author-

ity's alleged failure to comply with the Federal Lead-Based Paint Poisoning Prevention Act, 42 U.S.C. §4801 et seq. (1995), the housing inspection provisions of section 8 of the United States Housing Act of 1937, 42 U.S.C. §1437f (Supp. 1998), and regulations promulgated under the authority of these two laws.

The 1973 amendments to the LBPPPA added section 302 which reads in part as follows:

"The secretary of Housing and Urban Development shall establish procedures to eliminate as far as practicable the hazards of lead-based paint poisoning with respect to any existing housing which may present such hazards and which is covered by . . . housing assistance payments under a program administered by the secretary. . . ." Act of Nov. 9, 1973, P.L. no. 93-151, sec. 4(a)(1), 87 stat. 566 (codified at 42 U.S.C. §4822(a)(1)).

Under the previously described federal legislation and the implementing regulations, a housing authority must conduct a preoccupancy inspection for defective paint surfaces and other deficiencies and additional periodic inspections, at least annually thereafter, for units built before 1978 that will be occupied by any family with young children.[1] When the housing authority detects defective paint surfaces, it must follow HUD procedures for notifying tenants and owners of the presence of hazardous levels of lead paint.[2]

---

1. The housing quality standards (HQS) are set forth at 24 C.F.R. §882.109 and 24 C.F.R. §982.401. The housing quality standards governing lead paint promulgated under the authority granted HUD by LBPPPA are set forth at section 882.109(i) and 24 C.F.R. §982.401(j).

2. See *Roman v. Morace*, 1997 WL 777844 at 4-5 (S.D.N.Y. 1997), and *Hunter v. Estate of Baecher*, C.A. no. 2:95 CV 878 at 3-5 (E.D. Va. 4/4/96), for a discussion of the applicable regulations.

In the present case, plaintiff-tenant alleges that the property which she rented contained numerous areas of cracking, chipping, peeling, and otherwise deteriorating paint during the entire period that plaintiff and her grandson occupied the property, from April 1995 to October 1997, and that the housing authority failed to properly conduct the required inspections. The housing authority has filed preliminary objections seeking dismissal of plaintiff's section 1983 action on the ground that violations of the LBPPPA, the inspection provisions of section 8, and the implementing HUD regulations cannot be enforced through a private action for money damages under section 1983. These preliminary objections are the subject of this opinion and order of court.

Section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the constitution and laws of the United States. In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 2504 (1980), the United States Supreme Court held that section 1983 provides a cause of action for violations of federal statutes. Subsequent case law restricts section 1983 actions to violations of federal legislation creating federal rights; section 1983 actions cannot be based on what are characterized as simply violations of federal law.

The United States Supreme Court applies the analysis developed in *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 110 S.Ct. 2510 (1990), to determine which federal laws create federal rights enforceable under section 1983. This analysis was described in *Blessing v. Freestone*, 117 S.Ct. 1353, 1359-60 (1997) (citations omitted), as follows:

"In order to seek redress through section 1983, however, a plaintiff must assert the violation of a federal

right, not merely a violation of federal law. We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the states. . . . Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under section 1983. Because our inquiry focuses on congressional intent, dismissal is proper if Congress 'specifically foreclosed a remedy under section 1983.' Congress may do so expressly, by forbidding recourse to section 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under section 1983."

In the cases of *Roman v. Morace, supra,* 1997 WL 777844; *Hunter v. Estate of Baecher, supra,* C.A. no. 2:95 CV 878; and *Parker v. Philadelphia Housing Authority,* 33 Phila. 97 (1997), the housing authorities contended that a tenant may not base a section 1983 action on alleged violations of the LBPPPA, the inspection provisions of section 8, and their implementing regulations. In each case, the court concluded that under the *Wilder* analysis, the plaintiffs may maintain a section 1983 cause of action.[3] Each court found that the plaintiffs

---

3. In *Roman v. Morace, supra,* the court dismissed the section 1983 action on the ground that the plaintiffs failed to meet the requirements under *Monell v. New York City Department of Social Services,* 98 S.Ct. 2018 (1978), that a plaintiff seeking to hold a municipality liable under section 1983 establish that the violation

were the intended beneficiaries of legislation and implementing regulations, that the legislation and implementing regulations imposed requirements that were sufficiently specific to be within the competence of the judiciary to enforce, that the legislation and the implementing regulations created mandatory directives, that there was no explicit provision within the legislation forbidding recourse to section 1983, and that a private cause of action is not inconsistent with the regulatory scheme. I find these opinions to be persuasive and adopt their reasoning.

Plaintiff's position is also supported by *Wright v. City of Roanoke Development & Housing Authority*, 479 U.S. 418, 107 S.Ct. 766 (1987), which permitted tenants living in section 8 housing to sue a housing authority under section 1983 for violating the rent ceiling imposed by an amendment to the Housing Act of 1937 and implementing HUD regulations and by *Farley v. Philadelphia Housing Authority*, 102 F.3d 697 (3d Cir. 1996), which permitted a tenant to bring a section 1983 action against a housing authority to enforce provisions of the Housing Act governing administrative grievance procedures for tenants disputing adverse housing authority actions.

The plaintiffs in the *Roman, Hunter* and *Parker* lawsuits left the leasehold premises prior to October 2, 1995. In the present case, plaintiff and her grandson occupied the premises until October 1997. Consequently, this case involves an additional issue that was not addressed in the previous lawsuits. The housing

---

of federal rights resulted from a municipal custom or policy. The issue of whether plaintiffs in the present case can meet the *Monell* requirements is not before me at this time.

authority seeks dismissal under 24 C.F.R. §982.406 (effective date, October 2, 1995) which provides that:

"Part 982 does not create any right of the family, or any other party other than HUD or the HA, to require enforcement of the HQS requirements by HUD or the HA, or to assert any claim against HUD or the HA, for damages, injunction or other relief, for alleged failure to enforce the HQS."

The housing authority's obligation to inspect section 8 premises for violations of the HUD lead-based paint regulations is an HQS requirement. The housing authority contends that HUD promulgated 24 C.F.R. §982.406 in order to bar tenants from bringing any lawsuits, including section 1983 actions, against a housing authority based on a housing authority's failure to inspect for defective paint surfaces. The housing authority relies on the language providing that part 982 does not create any right of a family to assert any claim against a housing authority for damages for alleged failure to enforce the HQS. Plaintiff contends that HUD lacked authority to promulgate 24 C.F.R. §982.406.

The standards for judicial review of regulations promulgated by a federal administrative body are set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.,* 104 S.Ct. 2778 (1984). An administrative agency is authorized to promulgate legislative regulations only to the extent that Congress has explicitly or implicitly delegated such authority to the agency. Where a challenge to an agency's regulation centers on the wisdom of the agency's policy, a judge shall not substitute his or her policy preferences for the preferences of the administrative agency to which Congress has delegated policy-making responsibilities. On the other hand, where a regulation is challenged on the ground that the agency is regulating matters that are

beyond the scope of the authority which Congress has delegated to the agency, a court shall employ traditional tools of statutory construction. *Id.* at 2781 n.9, 2781-82.

In the present case, plaintiff's challenge is not based on the wisdom of the HUD policy. Plaintiff contends that Congress authorized HUD only to promulgate regulations establishing and implementing procedures to eliminate as far as practicable the hazards of lead-based paint poisoning and that the regulation which she challenges does not involve any procedures related to the elimination of the hazards of lead-based paint poisoning.

The housing authority contends, on the other hand, that this regulation covers a matter that HUD is authorized to address. It cites HUD's justification for the adoption of the regulation—"Elimination of unnecessary distinctions between the tenant-based program and a private market tenancy encourages broad participation by owners of units outside of areas of minority and high poverty concentration." 60 Fed. Reg. 34660, 34676 (1995).

The first issue that I address is whether the HUD regulation at 24 C.F.R. §982.406 upon which the housing authority relies was intended to bar a tenant from bringing a section 1983 action against a housing authority based on alleged violations of the LBPPPA, the inspection provisions of section 8, and the implementing HUD regulations. It is clear that HUD intended to prevent causes of action based solely on its administrative regulations governing the enforcement of HQS. However, a section 1983 claim is based on separate federal legislation under which a plaintiff must first establish a violation of a federal right grounded in the United States Constitution or congressional legislation (*i.e.,* the

*Wilder* requirements). Upon a showing that the *Wilder* requirements have been met, the plaintiff must next meet the requirements under *Monell v. New York City Department of Social Services, supra,* 98 S.Ct. 2018, that the plaintiff establish that the violation of his or her federal rights resulted from a municipal custom or policy. See *Roman v. Morace, supra,* 1997 WL 777844, where the court recognized as separate and distinct a section 1983 claim against the housing authority based on violations of the LBPPPA, the inspection provisions of section 8, and the implementing HUD regulations governing lead paint, and a claim against the housing authority based solely on violations of the HUD regulations governing lead paint.

The regulation upon which the Housing Authority relies does not contain any language suggesting that HUD was attempting to divest federal or state courts of section 1983 jurisdiction. The housing authority has not cited any history surrounding the promulgation of this regulation which indicates that HUD intended for this regulation to limit a tenant's ability to bring a section 1983 action based on violations of the LBPPPA, the inspection provisions of section 8, and the implementing HUD regulations. When the final rule was published, no comments to this rule were discussed.

Beginning in 1969, amendments to the Housing Act of 1937 have imposed a ceiling for rents charged to low-income people (Brooke Amendment). HUD regulations promulgated pursuant to the Brooke Amendment included certain utility payments within the definition of rent for purposes of the rent ceiling.

Among HUD's 1982 proposed regulations was section 865.476(d), 47 Fed. Reg. 35249, 35254 (1982),

which would have confined tenant utility-allowance challenges to procedures available in the state courts. The final regulation did not impose any such limitations. In the supplementary information section of HUD's publication of the final regulations, HUD discussed why it omitted this limitation. HUD stated that legal service groups had challenged HUD's power to divest federal courts of jurisdiction over cases involving questions of compliance with federal statutes and regulations. HUD stated that "the department's power to preclude access to federal court is doubtful." 49 Fed. Reg. 31399, 31403 (1984).

See *Wright v. City of Roanoke Development & Housing Authority, supra,* 107 S.Ct. at 772, 774 n.11, for a discussion of HUD's proposed and final regulation. Also see the dissenting opinion of Justice O'Connor which stated that:

"Thus, HUD did not express the view that there is a right to reasonable utilities enforcement in federal courts; it simply recognized that it lacked authority to determine federal jurisdiction." *Id.* at 779.

In order to accept the housing authority's interpretation of 24 C.F.R. §982.406, I would have to conclude that HUD, without discussion of the issue and without public comments, reversed its position. I do not believe that HUD functions in this fashion.

Furthermore, I am unwilling to construe 24 C.F.R. §982.406 in the manner which the housing authority proposes unless there appears to be substantial legal support for the position that HUD may divest the federal and state courts of jurisdiction conferred through federal legislation. I do not find a substantial argument for this position.

An administrative agency is authorized to formulate policy and make rules where Congress has implicitly or explicitly left a gap for the agency to fill. *Chevron U.S.A. Inc. v. National Resources Defense Council Inc., supra,* 104 S.Ct. at 2781-82. The gap that Congress left HUD to fill involved the development of procedures to eliminate the hazards of lead-based paint poisoning in federally subsidized housing. There is not a sufficient relationship between procedures involving the elimination of hazards of lead-based paint poisoning and a regulation purportedly prohibiting a tenant from maintaining a section 1983 action based on violations of HUD procedures for eliminating the hazards of lead-based paint poisoning for the latter to be characterized as coming within the gap that HUD was authorized to fill.

Furthermore, at the time HUD was authorized to promulgate regulations eliminating the hazards of lead-based paint poisoning, there was no unfilled gap as to the jurisdiction of federal and state courts to provide injunctive relief and money damages for violations of federal rights resulting from a municipal custom or policy. As of 1871, the Civil Rights Act codified at 42 U.S.C. §1983 conferred jurisdiction on the federal and state courts to provide relief for the deprivation of rights secured by the constitution and the laws of the United States.

I do not believe that the housing authority is claiming that through the enactment of the United States Housing Act of 1937, the amendments to this Act, or the LBPPPA, Congress intended to alter the scope of this 1871 legislation. Thus, if the HUD regulation is construed in the fashion which the housing authority proposes, HUD

is not filling a gap but rather is attempting to override congressional legislation enacted in 1871. Obviously, it lacks the power to do so.

In this analysis, I am not suggesting that a HUD regulation has no impact on the question of whether a person may bring a section 1983 action to enforce federal legislation and the implementing HUD regulations. I am stating only that HUD lacks the authority to promulgate regulations for the purpose of affecting section 1983 jurisdiction. For example, if the HUD regulations governing lead-based paint had provided only for housing authorities to make reasonable efforts, consistent with available resources and other priorities, to inspect for defective paint surfaces, it is unlikely that a tenant could maintain an action against a housing authority under section 1983 based on alleged violations of the inspection provisions of the LBPPPA, section 8, and their implementing regulations. However, the reason that a section 1983 action could not be maintained would have nothing to do with whether or not HUD expressed any view as to enforcement of these regulations through a section 1983 action. Instead the section 1983 action could not be maintained because, according to the United States Supreme Court's construction of section 1983, Congress did not intend to provide a remedy under section 1983, where federal mandates impose general, rather than specific, obligations on state and local bodies.

For these reasons, I enter the following order of court:

## ORDER

On October 14, 1998, it is hereby ordered that defendant housing authority's preliminary objections seek-

ing dismissal of plaintiff's section 1983 action on the ground that violations of the LBPPPA, the inspection provisions of section 8 of the United States Housing Act, and their implementing regulations cannot be enforced through a private action for money damages under section 1983 are overruled.