**Sampson CONWAY, Plaintiff,**

v.

**HOUSING AUTHORITY OF THE CITY OF ASHEVILLE; Michael Goodwin; Alberta Williams; Trina Finely; and Does 1–10, Defendants.**

**Civil No. 1:02CV8.**

United States District Court,
W.D. North Carolina,
Asheville Division.

Dec. 19, 2002.

---

594

Kyle King, Asheville, NC, for plaintiff.

Allan P. Root, Root & Root, Weaverville, NC, for defendants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Defendants' motion to dismiss and motion for summary judgment, opposed by Plaintiff. For the reasons stated herein, Defen-

dants' motions are denied and the parties are ordered to follow Defendant Asheville Housing Authority's grievance procedure to resolve the relevant issue.

## I.  STATEMENT OF FACTS

This action is unusual in that the parties agree on the facts, although their conclusions drawn therefrom differ. Plaintiff Sampson Conway was a tenant of Defendant City of Asheville Housing Authority (hereinafter, "Housing Authority"). **Defendants' Memorandum in Support of Motion to Dismiss and for Summary Judgment ["Defendants' Memorandum"], filed October 11, 2002, at 1.** On October 4, 2001, the Buncombe County Small Claims court entered a judgment, in favor of the Asheville Housing Authority, evicting the Plaintiff for failure to pay rent. **Exhibit 1, Judgment in Action for Summary Ejectment, *attached to* Defendants' Memorandum.** Conway did not attend this hearing. **Deposition of Sampson Conway, at 7.**

On October 12, 2001, Plaintiff appealed the eviction order to Buncombe County District Court by executing a Notice of Appeal to District Court. **Exhibit 2, Notice of Appeal to District Court, *attached to* Defendants' Memorandum.** As required, Plaintiff signed a bond, ensuring that he would pay his rent, as it became due, with the clerk of court's office, while his appeal was pending. **Exhibit 3, Bond to Stay Execution on Appeal of Summary Ejectment Judgment, *attached to* Defendants' Memorandum.** The bond also required that Plaintiff pay the prorated amount of rent that was due in cash; failure to pay this prorated amount within ten days of the entry of judgment would entitle the landlord to have the sheriff remove the tenant from the premises. *Id.* Plaintiff admits that although he signed the bond, he made no payment on the bond. **Conway Deposition, at 10.**

Around November 1, 2001, Plaintiff telephoned Defendant Alberta Williams, a Housing Authority employee, and told her that he had the money to bring his account up to date.[1] In a three-way phone conversation between Plaintiff and Defendants Williams and Trina Finley, Williams initially told Plaintiff to pay the rent that was due, but Finley, the apartment manager at that time, told Plaintiff that she would not accept his payment because of other issues she had with him. *Id.,* at 12–13. These issues included complaints from other tenants, Conway's failure to respond to Finley's requests for meetings, and unauthorized guests on the apartment complex's premises. Conway did not make any further attempt to pay the rent. *Id.,* at 14.

On November 9, 2001, Plaintiff hand-delivered a written request for a grievance hearing to the Housing Authority. In his notice, he stated: "I am herein requesting a greivience [sic] hearing about the decision that was made to not accept my rent. That decision was made during a three way phone conference which included myself, Ms. Finley, and Ms. Alberta Williams. Our conference was held on 11/8/01." *Id.,* at 18–20; *see also,* **Deposition Exhibit 6, *attached to* Conway Deposition; Exhibit 4, *attached to* Defendants' Memorandum.** At the time Plaintiff delivered his hearing request, neither the Plaintiff nor the Housing Authority took any immediate action. *Id.,* at 19–20.

On November 13, 2001, Plaintiff's appeal from the small claims court decision was

---

1.  Plaintiff's written request for a grievance hearing states that he made this call on November 8, 2001. Whether the call occurred on November 1 or November 8 is not material to the final analysis.

scheduled to be heard in Buncombe County District Court. Plaintiff did not appear in court and his appeal was dismissed. *Id.*, at 20–21.

On November 28, 2001, Plaintiff was evicted pursuant to the state court order. *Id.*, at 23. At that time, he called Williams who advised that he was not entitled to a grievance hearing. Later, Plaintiff was told by another Housing Authority employee, Defendant Michael Goodwin, that he was not entitled to a grievance hearing. *Id.*, at 25–26.

## II. DISCUSSION

### A. Motion to Dismiss

■ When a Fed.R.Civ.P. 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Id.; Trentacosta v. Frontier Pacific Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Trentacosta*, 813 F.2d at 1559 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.*, at 1558; *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

■ Defendants have moved to dismiss under Rule 12(b)(1), claiming that the *Rooker–Feldman* doctrine prevents this Court from exercising subject matter jurisdiction. *See* Defendants' Memorandum, at 5. The *Rooker–Feldman* doctrine prohibits lower federal courts from reviewing state court decisions. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). "[J]urisdiction to review such [state court decisions] lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir.1997) (citations omitted). The *Rooker–Feldman* doctrine applies to those issues actually decided by a state court, as well as to those issues that are "inextricably intertwined with questions ruled upon by a state court." *Id.* (internal quotations omitted). A federal claim is "inextricably intertwined" with a state court decision if "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Id.* (internal quotations omitted). In other words, "if 'in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual,' *Rooker–Feldman* is implicated." *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 202 (4th Cir.1997) (quoting *Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 491 (3rd Cir.1997)) (other citations omitted).

In the instant case, Defendants argue that *Rooker–Feldman* applies because the Plaintiff is attempting to relitigate, and thereby reverse, the summary ejectment order that was entered by the Buncombe

County District Court. Defendants, however, are misconstruing the Plaintiff's claim. The Plaintiff's federal claim is that he was denied full access to the grievance procedure as outlined in the Housing Authority's regulations. *See* **Exhibit 7, Housing Authority of the City of Asheville Grievance Procedure,** *attached to* **Defendants' Memorandum;** *see also* 24 C.F.R. § 966.50. He is not contesting the eviction itself or the state proceedings, but rather the fact that the Housing Authority did not grant him the grievance procedure to which he was entitled under the United States Code. *See* 42 U.S.C. § 1437d(k). This claim involves a separate issue from his state court eviction proceedings and, therefore, is not barred by the *Rooker–Feldman* doctrine.

Furthermore, Plaintiff's current claim is not "inextricably intertwined" with the state court decision. The state court decision allowing the Plaintiff's eviction is separate from the Plaintiff's right to a grievance hearing. The undersigned agrees with the Defendants that this Court cannot review the state court's decision. This Court is, however, in a position to decide whether the Plaintiff was entitled to a grievance hearing and, if so, the appropriate relief. Such a decision will not require this Court to determine whether or not the state court ruled erroneously. The *Rooker–Feldman* doctrine, therefore, does not apply to the current case.

■ Defendants further argue that Plaintiff's cause of action is barred by *res judicata.* Defendants claim that the state court final judgment regarding Plaintiff's eviction prevents him from further litigating it in this action. Defendants' reliance on *res judicata* is misplaced.

*Res judicata* "provides that when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy . . . not only as to

every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (internal quotations omitted). As stated above, Plaintiff is not contesting his eviction itself. He is contesting his denial of access to the grievance procedure. This issue was not litigated in the state court proceeding. Nor could it have been, as Plaintiff was not told he was being denied access to the grievance procedure until after the state court decision became final. *Res judicata,* therefore, does not apply.

**B.  Summary Judgment**

Summary judgment is appropriate when there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party, here the Plaintiff. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). By reviewing substantive law, the Court may determine what matters constitute material facts. *Anderson, supra.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* The Defendants as the moving parties have the initial burden to show a lack of evidence to support the Plaintiff's case. *Shaw, supra* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If that showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. *Id.* A "mere scintilla of evidence" is not

sufficient to defeat summary judgment. *Id.* Moreover, in considering the facts of the case for purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ Defendants first claim that there is no cognizable private right of action under 42 U.S.C. § 1983 for a violation of 42 U.S.C. § 1437d(k).[2] Under § 1983, a plaintiff may sue in order to remedy violations of federal statutes by agents of the state. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Two exceptions exist, however; and a § 1983 claim is unavailable where Congress itself has prohibited a § 1983 cause of action in the enactment of the legislation and where the statute did not create enforceable rights, privileges, or immunities. *See Middlesex County Sewerage Auth. v. National Sea Clammers Assn.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Plaintiff's § 1983 private right of action does not fall into either of these exceptions.

First, the Supreme Court has held that by implementing the Housing Act and its remedial mechanisms, Congress did not prohibit private enforcement by a § 1983 action. *Wright v. Roanoke Redev. and Hous. Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). In *Wright*, the Supreme Court specifically held that tenants in public housing could bring suit under § 1983 in order to challenge the Housing Authority's rent calculations. *Id.*, at 427–29, 107 S.Ct. 766. The Court emphasized that the Housing Act itself provided only local, administrative procedures and no private judicial remedy. *Id.*, at 427, 107 S.Ct. 766. This availability of state administrative remedies alone, "does not ordinarily foreclose resort to § 1983." *Id.*, at 427–28, 107 S.Ct. 766. Further, the Court noted that HUD did not provide a procedure for tenants to complain to them about deficiencies with their public housing authority (hereinafter, "PHA") and HUD did not review the decisions resulting from local grievance procedures. *Id.*, at 426, 107 S.Ct. 766. According to the Court, HUD "had no thought that its own supervisory powers or the grievance system that it had established foreclosed resort to the courts by tenants." *Id.* Finally, nothing in the statute at issue in *Wright* "or elsewhere in the Housing Act evidences that Congress intended to supplant the § 1983 remedy." *Id.*, at 429, 107 S.Ct. 766.

Second, courts have found that Congress did intend to give public housing tenants the right to enforce their grievance procedure. *See Samuels v. District of Columbia*, 770 F.2d 184 (D.C.Cir.1985); *Farley v. Philadelphia Hous. Auth.*, 102 F.3d 697 (3rd Cir.1996). In *Samuels*, the court examined the legislative history of 42 U.S.C. § 1437d(k) and the history of the circulars that predated the statute. The court found that "Congress clearly intended to require local PHAs to provide an administrative grievance procedure for tenant complaints of adverse PHA action, and nothing in the structure or history of the [Housing] Act indicates that Congress intended to foreclose private enforcement of

---

**2.** Defendants note, however, that the analysis from the Fourth Circuit case upon which they rely, *Phelps v. Housing Auth. of Woodruff*, 742 F.2d 816 (4th Cir.1984), was overturned by the Supreme Court in *Wright v. Roanoke Re-* *dev. & Hous. Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), and the original analysis has not since been followed. *See* Defendants' Memorandum, at 5.

that obligation." *Samuels,* 770 F.2d at 197. Further, the language of both 42 U.S.C. § 1437d(k) and 24 C.F.R. § 966.52 is clear and mandatory. The language is not too ambiguous to be enforced by courts. *Farley,* 102 F.3d at 702. Section 1437d(k) and its regulations impose mandatory obligations on PHAs and provide the grievance procedure they must follow. *Id.,* at 703. Finally, HUD's grievance procedure regulation "provides that a decision terminating a grievance proceeding shall in no way affect the rights of a tenant either to seek 'trial *de novo* or judicial review in any judicial proceedings which may thereafter be brought in the matter.' " *Wright,* 479 U.S. at 426, 107 S.Ct. 766 (quoting 24 C.F.R. § 966.57(c)). Public housing tenants have a private right of action to enforce their grievance procedure under § 1983. Defendants' argument that there is no such private right of action fails.

■ Defendants next argue that the Plaintiff was simply not entitled to a grievance hearing. First, Defendants state that Plaintiff was not a legal tenant of the Housing Authority after the stay of the small claims court order dissolved and, therefore, was not entitled to the grievance procedure when he presented his written request on November 9, 2001.[3] The published grievance procedure, however, states that it "has been adopted to provide a forum and procedure for *Residents* to seek the just, effective and efficient settlement of grievances...." **Exhibit 7,** *supra,* **at Section I (emphasis added).** The policy defines "Resident" as: "[t]he adult person (or persons) other than a live-in aid: 1) Who resides in the unit, and who executed the lease with the [Housing Authority] as lessee of the dwelling unit ...." *Id.,* at

Section V, ¶ K(1). At the time Plaintiff delivered his letter requesting access to the grievance procedure, he was the adult living in the unit and had signed the lease with the Housing Authority. **Conway Deposition, at 5, 23.** He, therefore, was a Resident, as defined in the policy and was entitled to the protection of the grievance procedure.

In addition, the grievance procedure states that "the tenancy shall not terminate (even if any notice to vacate under State or local law has expired) until the time for the tenant to request a grievance hearing has expired, and (if a hearing was timely requested by the tenant) the grievance procedure has been completed." **Exhibit 7, at Section III.** According to the grievance procedure, a resident has ten days after the event giving rise to the grievance occurs, in which to file a complaint. *Id.,* **at Section VII, ¶ A.** In the current case, Plaintiff claims he was told his rent would not be accepted by Williams and Finley on November 8, 2001. Defendants claim this conversation took place around November 1, 2001. Assuming *arguendo* that the conversation occurred on November 1, 2001, Plaintiff would have had until November 11, 2001, to file his complaint with the Housing Authority. Both parties agree that he delivered his request on November 9, thereby meeting even the earlier deadline of November 11. His timely request, therefore, should have triggered the grievance procedure; and, according to the policy, the tenancy would not terminate until the procedure had been completed.

■ Defendants' second argument is that the Plaintiff is not entitled to a grievance hearing because he did not pay an

---

**3.** It is unclear from the Defendants' motion the exact date the stay of eviction dissolved. Defendants indicate that it was sometime be- fore November 1, 2001, and Plaintiff has not disputed the date.

escrow deposit before his hearing, as required by the grievance procedure. The policy states: "[b]efore a hearing can be held for any reason, the Resident shall deposit his rent and/or any other charges in an escrow account with the Authority." *Id.,* at Section IX, ¶ A(6). The Plaintiff admits he did not pay any money into an escrow account; however, he was not yet at the point in the grievance procedure where he needed to pay any money. The escrow deposit is required before a formal hearing can take place. *Id.* The formal hearing occurs only after an informal hearing takes place, a written answer by the Housing Authority is delivered to the Resident, and a request for a formal hearing is made by the Resident. *Id.,* at Sections VII & VIII. The Plaintiff's November 9th letter was simply a request to initiate the grievance procedure, which would have begun with an informal hearing. Plaintiff, however, was never afforded an informal hearing and the Housing Authority never provided him with a written answer. Because of Defendants' actions, the Plaintiff simply did not reach the point in the procedure where he was required to deposit funds into an escrow account. Defendants' argument, therefore, fails.

The parties have agreed to the facts as outlined in Defendants' Memorandum. There is no genuine issue of material fact. The undersigned finds that the Plaintiff has a valid cause of action under 42 U.S.C. § 1983 for Defendants' failure to provide Plaintiff access to the Housing Authority's established grievance procedure. The undersigned, therefore, denies Defendants' motions, enters Judgment for the Plaintiff and directs the parties to proceed with the grievance procedure to address Plaintiff's complaint that the relevant Defendants would not accept his rent payment.

### III. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motion to dismiss and for summary judgment is hereby **DENIED**. Judgment for the Plaintiff is filed herewith.

### *JUDGMENT*

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that the Defendants' motion to dismiss and for summary judgment is **DENIED,** the parties are directed to proceed with the grievance procedure in accordance with the instructions herein, and this matter is hereby **DISMISSED WITH PREJUDICE** in its entirety.